UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEAN MINSKOFF GRANT, | : |
| Plaintiff, | : |
| | : |
| | : No. 08 CV 508 (CLB) |
| -against- | : **FILED BY ECF** |
| | : |
| MYCA, LLC and 2220 EQUITIES MANAGEMENT | : |
| LIMITED PARTNERSHIP, | : |
| | : |
| Defendants. | : |
| | : |
| MLP I and QCR 77 LLC, | : |
| Plaintiffs, | : |
| | : No. 08 CV 511 (CLB) |
| -against- | : **FILED BY ECF** |
| | : |
| MYCA, LLC and 2220 EQUITIES MANAGEMENT | : |
| LIMITED PARTNERSHIP, | : |
| | : |
| Defendants. | : |
| | : |

### DECLARATION OF MICHAEL D. LOCKARD
### IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS
### PLAINTIFFS' SECOND CLAIM FOR INJUNCTIVE RELIEF

MICHAEL D. LOCKARD affirms under the penalties of perjury as follows:

1.      I am associated with the law firm of Akin Gump Strauss Hauer & Feld LLP,

attorneys for the defendant MYCA, LLC.  As such, I am fully familiar with the facts set forth

herein and the documents attached hereto.

2.      Annexed hereto as Exhibit 1 is a true and correct copy of the Complaint in *Grant*

*v. MYCA, LLC*, No. 08 CV 508 (the "Halstead-Harrison Action").  Annexed hereto as Exhibit 2 is

a true and correct copy of the Complaint in *MLP I v. MYCA*, LLC (the "77th Queens Action"),

No. 08 CV 511.

1

3.    The Complaints were served on MYCA, LLC on or about February 8, 2008.

4.    Annexed hereto as Exhibit 3 are true and correct copies of the civil cover sheets attached to the complaints in *Grant v. MYCA, LLC*, No. 08 Civ. 508 (CLB) (S.D.N.Y.), *Scorpio 8283 LLC v. MYCA, LLC*, No. 08 Civ. 510 (CLB) (S.D.N.Y.), *MLP I v. MYCA, LLC*, No. 08 Civ. 511 (CLB) (S.D.N.Y.), *Grant v. Minskoff*, Index No. 03175/2008 (N.Y. Sup. Ct.) and *Grant v. Minskoff*, Index No. 03176/2008 (N.Y. Sup. Ct.). The cover sheets identify Willkie Farr and Gallagher LLP as counsel to all plaintiffs.

5.    Annexed hereto as Exhibit 4 is a true and correct copy of the Order to Show Cause in *Post-Broadway et al. v. Minskoff Grant Realty Management Corporation*, Index No. 08/600217 (N.Y. Sup. Ct.) (the "Post-Broadway Action"). Annexed hereto as Exhibit 5 is a true and correct copy of the verified complaint, and exhibits attached thereto, in the Post-Broadway Action. Annexed hereto as Exhibit 6 is a true and correct copy of the docket sheet as of February 27, 2008 for the Post-Broadway Action. Annexed hereto as Exhibit 7 is a true and correct copy of the Affidavit of Michael Edward Breede dated February 1, 2008, filed in the Post-Broadway Action.

6.    A hearing was held on plaintiffs' motion for a preliminary injunction in the Post-Broadway Associates Action on February 5, 2008.

7.    Willkie Farr & Gallagher LLP also has appeared for Minskoff Grant Realty & Management Corp. in the Post-Broadway Action.

8.    I declare the foregoing to be true and correct.

Dated: February 28, 2008
    New York, New York

_____
Michael D. Lockard

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
JEAN MINSKOFF GRANT,
:
                    Plaintiff,
:
           v.
:
MYCA, LLC and 2220 EQUITIES
MANAGEMENT LIMITED PARTNERSHIP,
:
                 Defendants.
:
:
------------------------------------------------------------x

Civil Action No. 08-0508

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Jean Minskoff Grant ("Plaintiff"), by her attorneys, Willkie Farr & Gallagher LLP, hereby alleges against Defendants MYCA, LLC and 2220 Equities Management Limited Partnership (collectively "Defendants") as follows:

## THE PARTIES

1.     Plaintiff and Defendants are, collectively, all of the partners of Halstead-Harrison Associates, a general partnership organized and existing under the laws of the State of New York, with its principal place of business at 1350 Avenue of the Americas, New York, New York, 10019.

2.     Plaintiff Jean Minskoff Grant is a citizen of New York.

3.     Upon information and belief, Defendant MYCA, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Florida. Upon information and belief, the members of Defendant MYCA, LLC

4092151.6

are Sara Minskoff Allan and Carolyn Minskoff.  Upon information and belief, Sara Minskoff

Allan and Carolyn Minskoff are both citizens of Florida.

4.      Upon information and belief, Defendant 2220 Equities Management

Limited Partnership is a limited partnership organized and existing under the laws of the State of

New York, with its principal place of business at 2200 E. Gossamer Lane, Boise, Idaho, 83706.

Upon information and belief, the partners of Defendant 2220 Equities Management Limited

Partnership are Alan Minskoff and Royanne Minskoff.  Upon information and belief, Alan

Minskoff and Royanne Minskoff are both citizens of Idaho.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 as there

is complete diversity among the parties and the matter in controversy exceeds the sum or value

of $75,000, exclusive of interest and costs.

6.      Venue is proper in this District under 28 U.S.C. § 1391(a), in that a

substantial part of the events giving rise to the claims alleged herein occurred in this District and

a substantial part of property that is the subject of this action is situated in this District.

**BACKGROUND ALLEGATIONS AS TO ALL CAUSES OF ACTION**

7.      Beginning in the 1950's, Henry Minskoff, Jerome Minskoff, and Myron

Minskoff (collectively, the "Minskoff Brothers") formed a number of partnerships for the

purpose of acquiring, owning, and leasing real estate in and around New York City. Many of the

partnerships were formed with the Minskoff Brothers as the sole partners, and several of the

partnerships had partners in addition to the Minskoff Brothers.

-2-

4092151.6

8.      Among the partnerships that the Minskoff Brothers formed with one another was Halstead-Harrison Associates (the "Partnership"), which they formed in connection with ownership of the real property located at 270 to 278 Halstead Avenue, Harrison, New York, 10528 (the "Property").

9.      The Partnership was not one for a definite term or a particular undertaking and, upon information and belief, there was no written agreement among the partners concerning the business and affairs of the Partnership.

10.     Upon information and belief, in or about January 1975, the Partnership acquired the Property.

11.     Thereafter, in or about 1984, Henry Minskoff died, and pursuant to section 62 of the New York Partnership Law, the Partnership was dissolved. However, the Partnership was not wound up after Henry Minskoff's death, and the survivors and successors-in-interest continued to operate the business of the Partnership, thereby creating a new partnership at will.

12.     Thereafter, in or about 1994, Jerome Minskoff died, and pursuant to section 62 of the New York Partnership Law, the partnership then in existence was dissolved. However, that partnership was not wound up after Jerome Minskoff's death, and the survivors and successors-in-interest continued to operate the business of that partnership, thereby creating a new partnership at will.

13.     On or about May 14, 1999, Myron Minskoff sued to dissolve Halstead-Harrison Associates in the Supreme Court of the State of New York, County of New York.

4092151.6

However, neither Myron Minskoff, nor The Estate of Myron Minskoff after Myron Minskoff's

death, have taken action with regard to that claim since in or about March 2003.

14.    In or about 2000, Myron Minskoff died, and pursuant to section 62 of the

New York Partnership Law, the partnership then in existence was dissolved.  However, that

partnership was not wound up after Myron Minskoff's death, and the survivors and successors-

in-interest continued to operate the business of that partnership, thereby creating a new

partnership at will.

15.    The interests of the partners in the current partnership at will (the "New

Partnership") are as follows: Plaintiff Jean Minskoff Grant has a 33.333% interest; Defendant

MYCA, LLC has a 33.333% interest; and Defendant 2220 Equities Management Limited

Partnership has a 33.333% interest.

16.    Plaintiff and Defendants, as partners, jointly hold a valuable ownership

interest in the Property.  They have a valuable business, and a number of accounts receivable

which can be collected and are due and owing to the New Partnership.  The assets of the New

Partnership exceed its liabilities and are substantially in excess of $75,000.

## AS AND FOR A FIRST CAUSE OF ACTION

17.    Plaintiff repeats and realleges each and every allegation contained in

paragraphs 1 through 16 above as if fully set forth herein.

18.    Before the deaths of the Minskoff Brothers, the Partnership, as well as the

other partnerships in which the Minskoff Brothers jointly held interests, were run without any

significant problems among the partners.  However, after the deaths of the Minskoff Brothers,

4092151.6

the relationships between and among their successors-in-interest deteriorated. Such deterioration has affected all the entities in which the parties jointly hold interests.

19.    That deterioration of the relationships between and among the partners (and their principals) has resulted in difficulties and disagreements concerning material aspects of the conduct of the New Partnership and the business of the New Partnership.

20.    As a result of those difficulties, Plaintiff and Defendants have been unable to agree on numerous issues affecting the management, direction, and day-to-day operations of the New Partnership and the other partnerships in which Plaintiff and Defendants jointly hold interests, including, but not limited to: (i) the roles to be played by each partner in the management of the properties owned by the partnerships; (ii) whether and under what terms to lease space in certain partnership properties; (iii) the organizational structure of the partnerships; (iv) whether to refinance certain partnership loans; (v) whether to make capital investments and tenant improvements and otherwise; and (vi) how to allocate insurance obligations among the properties owned by the various partnerships.

21.    Irreconcilable differences exist regarding those issues and others. As a consequence, the parties are unable to conduct business in an appropriate manner and are deadlocked on decisions of import to the New Partnership.

22.    For years, efforts to resolve the problems that exist in the New Partnership, as well as in the numerous other partnerships in which Plaintiff and Defendants jointly hold interests, have consistently failed.

4092151.6

23.    As a consequence, there is no hope that the parties will be able to resolve the problems plaguing the New Partnership.

24.    As a result of the foregoing, it is not reasonably practicable for the New Partnership to function as originally intended or to carry on its business as a partnership.

25.    Accordingly, the present circumstances render the dissolution of the New Partnership equitable, and the New Partnership should therefore be dissolved.

26.    There is no adequate remedy at law for the relief sought herein.

## AS AND FOR A SECOND CAUSE OF ACTION

27.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 26 above as if fully set forth herein.

28.    Non-party Minskoff Grant Realty & Management Corp. ("MGRMC") is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 1350 Avenue of the Americas, New York, New York, 10019.  MGRMC provides asset management and direct management for a diversified portfolio of urban and suburban office buildings and retail properties.  Jean Minskoff Grant is the President and Chief Operating Officer of MGRMC, and Francis C. Grant III is the Chief Executive Officer of MGRMC.

29.    For several years, Jean Minskoff Grant and Francis C. Grant III, through MGRMC, have efficiently, successfully, and profitably managed the Property of the New Partnership to the substantial benefit of all the partners.

-6-

4092151.6

30.    Through MGRMC, Jean Minskoff Grant and Francis C. Grant III have collected rents, made repairs, distributed profits to the New Partnership, and performed numerous other responsibilities to ensure the successful management of the Property.

31.    MGRMC has been intimately involved on a day-to-day basis with the management of the New Partnership and the Property.

32.    Certain partners (the "Revoking Partners") have recently purported to enter into an agreement with a third party (the "Third Party Manager") for the management of the Property, and to revoke MGRMC's authority to act for the New Partnership.

33.    The Revoking Partners have failed to provide Plaintiff with relevant information concerning the agreement with the Third Party Manager.

34.    Upon information and belief, the Third Party Manager has not had any prior involvement with the New Partnership or the Property, and has not had any experience in managing the Property.

35.    Plaintiff believes that changing management will cause irreparable damage to the New Partnership's interests in the Property.

36.    Plaintiff also believes that changing management will result in a waste of New Partnership assets, as a significant amount of work would be required to transition the management of the Property to the Third Party Manager, and as the New Partnership would have to pay management fees to the Third Party Manager that are not currently being paid to MGRMC.

4092151.6

37.    As a result of the foregoing, Plaintiff requests an Order allowing it or its agents to continue managing the Property until the dissolution and winding up of New Partnership affairs is completed.

38.    There is no adequate remedy at law for the relief sought herein.

WHEREFORE, Plaintiff requests judgment against the Defendants as follows:

(a)    on the first cause of action,

    (i)    dissolving the New Partnership and ordering an accounting of all of the New Partnership's transactions and of all property and money received and paid by Plaintiff and Defendants respectively;

    (ii)    declaring under section 68 of the New York Partnership Law that there be a winding up of the New Partnership;

    (iii)    directing the appointment of a referee to oversee the winding up of the New Partnership affairs, the payment of the debts and liabilities of the New Partnership, and the division of the surplus assets between the partners according to their respective rights;

(b)    on the second cause of action, enjoining Defendants and allowing Plaintiff or its agents to continue managing the Property until the dissolution and winding up of Partnership affairs is completed; and

(c)    awarding Plaintiff the costs and disbursements of this action, together with such other and further relief as to this Court seems just and proper.

4092151.6

DATED:  New York, New York
        January 1&, 2008

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By

Thomas H. Golden (TG-1467)
(A Member of the Firm)

787 Seventh Avenue
New York, New York 10019-6099
tgolden@willkie.com
(212) 728-8000

Attorneys for Plaintiff

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                            :
MLP I and QCR 77 LLC,                       :
                                            :
                        Plaintiffs,         :
                                            :
            v.                              :        Civil Action No. 08- 0511
                                            :
MYCA, LLC and 2220 EQUITIES                 :        **JURY TRIAL DEMANDED**
MANAGEMENT LIMITED PARTNERSHIP,             :
                                            :
                        Defendants.         :
                                            :
------------------------------------------------------------x

## COMPLAINT

Plaintiffs, MLP I and QCR 77 LLC (collectively "Plaintiffs"), by their attorneys,

Willkie Farr & Gallagher LLP, hereby allege against Defendants MYCA, LLC and 2220

Equities Management Limited Partnership (collectively "Defendants") as follows:

## THE PARTIES

1.      Plaintiffs and Defendants are, collectively, all of the partners of 77th

Queens Associates, a general partnership organized and existing under the laws of the State of

New York, with its principal place of business at 1350 Avenue of the Americas, New York, New

York, 10019.

2.      Plaintiff MLP I is a limited partnership organized and existing under the

laws of the State of New York, with its principal place of business at 1350 Avenue of the

Americas, New York, New York, 10019.  Plaintiff MLP I is comprised of Jean Minskoff Grant

as general partner and James D. Sterling as limited partner.  Jean Minskoff Grant and James D.

Sterling are both citizens of New York.

4084231.12

3.      Plaintiff QCR 77 LLC is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business at 56 Ivy Hill Road, Ridgefield, CT, 06877.  Plaintiff QCR 77 LLC's sole member is the Maggie P. Minskoff QTIP Trust, of which Patricia Breede is the sole trustee.  Patricia Breede is a citizen of Connecticut.

4.      Upon information and belief, Defendant MYCA, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Florida.  Upon information and belief, the members of Defendant MYCA, LLC are Sara Minskoff Allan and Carolyn Minskoff.  Upon information and belief, Sara Minskoff Allan and Carolyn Minskoff are both citizens of Florida.

5.      Upon information and belief, Defendant 2220 Equities Management Limited Partnership is a limited partnership organized and existing under the laws of the State of New York, with its principal place of business at 2200 E. Gossamer Lane, Boise, Idaho, 83706.  Upon information and belief, the partners of Defendant 2220 Equities Management Limited Partnership are Alan Minskoff and Royanne Minskoff.  Upon information and belief, Alan Minskoff and Royanne Minskoff are both citizens of Idaho.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 as there is complete diversity among the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4084231.12

7.     Venue is proper in this District under 28 U.S.C. § 1391(a), in that a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## BACKGROUND ALLEGATIONS AS TO ALL CAUSES OF ACTION

8.     Beginning in the 1950's, Henry Minskoff, Jerome Minskoff, and Myron Minskoff (collectively, "the Minskoff Brothers") formed a number of partnerships for the purpose of acquiring, owning, and leasing real estate in and around New York City.  Many of the partnerships were formed with the Minskoff Brothers as the sole partners, and several of the partnerships had partners in addition to the Minskoff Brothers.

9.     Among the partnerships that the Minskoff Brothers formed with one another was 77th Queens Associates (the "Partnership").

10.    The Partnership was formed pursuant to a general partnership agreement dated November 2, 1970, and amended December 24, 1970 (the "Partnership Agreement"), which agreement and amendment are annexed hereto and made a part hereof and marked as "Exhibit A."

11.    Pursuant to paragraph 4 of the Partnership Agreement, the Partnership was formed for the purpose of acquiring a leasehold interest (the "Lease") on the land and building thereon known as 116-02 to 116-32 Queens Boulevard, Borough of Queens, City of New York (the "Property"), and operating and managing said Property.

12.    The Partnership's Lease on the Property expires in or about 2024.  It is the principal asset of the Partnership.

4084231.12

13.    At the time the Partnership Agreement was entered into, Henry Minskoff, Jerome Minksoff, Myron Minskoff, and Muriel Minskoff, all now deceased, were the general partners of the Partnership.

14.    On or about December 24, 1970, Henry Minksoff, Jerome Minskoff, Myron Minskoff, and Muriel Minskoff executed a Business Certificate for Partners, amending the Partnership Agreement to reflect the withdrawal of Muriel Minskoff from the Partnership and the assignment of her share to the remaining partners.

15.    Pursuant to paragraph 14 of the Partnership Agreement, after the deaths of the Minskoff Brothers, their interests were eventually assigned to Plaintiffs and Defendants.

16.    The interests of the partners in the Partnership are currently as follows: Plaintiff MLP I has an 8.33% interest; Plaintiff QCR 77 LLC has a 33.33% interest; Defendant MYCA, LLC has a 33.34% interest; and Defendant 2220 Equities Management Limited Partnership has a 25.00% interest.

17.    Plaintiffs and Defendants, as partners, jointly hold a valuable leasehold interest. They have a valuable business, and a number of accounts receivable which can be collected and are due and owing to the Partnership. The assets of the Partnership exceed its liabilities and are substantially in excess of $75,000.

## AS AND FOR A FIRST CAUSE OF ACTION

18.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 17 above as if fully set forth herein.

4084231.12

19.    Before the deaths of the Minskoff Brothers, the Partnership, as well as the other partnerships in which the Minskoff Brothers jointly held interests, were run without any significant problems among the partners. However, after the deaths of the Minskoff Brothers, the relationships between and among their successors-in-interest deteriorated. Such deterioration has affected all the entities in which the parties jointly hold interests.

20.    That deterioration of the relationships between and among the partners (and their principals) has resulted in difficulties and disagreements concerning material aspects of the conduct of the Partnership and the business of the Partnership.

21.    As a result of those difficulties, Plaintiffs and Defendants have been unable to agree on numerous issues affecting the management, direction, and day-to-day operations of the Partnership and the other partnerships in which Plaintiffs and Defendants jointly hold interests, including, but not limited to: (i) the roles to be played by each partner in the management of the properties owned by the partnerships; (ii) whether and under what terms to lease space in certain partnership properties; (iii) the organizational structure of the partnerships; (iv) whether to refinance certain partnership loans; (v) whether to make capital investments and tenant improvements and otherwise; and (vi) how to allocate insurance obligations among the properties owned by the various partnerships.

22.    Irreconcilable differences exist regarding those issues and others. As a consequence, the parties are unable to conduct business in an appropriate manner and are deadlocked on decisions of import to the Partnership.

4084231.12

23.    For years, efforts to resolve the problems that exist in the Partnership, as well as in the numerous other partnerships in which Plaintiffs and Defendants jointly hold interests, have consistently failed.

24.    As a consequence, there is no hope that the parties will be able to resolve the problems plaguing the Partnership.

25.    As a result of the foregoing, it is not reasonably practicable for the Partnership to carry on its business in conformity with the Partnership Agreement.

26.    Accordingly, the present circumstances render the dissolution of the Partnership equitable, and the Partnership should therefore be dissolved.

27.    There is no adequate remedy at law for the relief sought herein.

## AS AND FOR A SECOND CAUSE OF ACTION

28.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 27 above as if fully set forth herein.

29.    Non-party Minskoff Grant Realty & Management Corp. ("MGRMC") is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 1350 Avenue of the Americas, New York, New York, 10019. MGRMC provides asset management and direct management for a diversified portfolio of urban and suburban office buildings and retail properties. Jean Minskoff Grant is the President and Chief Operating Officer of MGRMC, and Francis C. Grant III is the Chief Executive Officer of MGRMC.

4084231.12

30.    For several years, Jean Minskoff Grant and Francis C. Grant III, through MGRMC, have efficiently, successfully, and profitably managed the Property of the Partnership to the substantial benefit of all the partners.

31.    Through MGRMC, Jean Minskoff Grant and Francis C. Grant III have collected rents, made repairs, distributed profits to the Partnership, and performed numerous other responsibilities to ensure the successful management of the Property.

32.    MGRMC has been intimately involved on a day-to-day basis with the management of the Partnership and the Property.

33.    Certain partners (the "Revoking Partners") have recently purported to enter into an agreement with a third party (the "Third Party Manager") for the management of the Property, and to revoke MGRMC's authority to act for the Partnership.

34.    The Revoking Partners have failed to provide Plaintiffs with relevant information concerning the agreement with the Third Party Manager.

35.    Upon information and belief, the Third Party Manager has not had any prior involvement with the Partnership or the Property, and has not had any experience in managing the Property.

36.    Plaintiffs believe that changing management will cause irreparable damage to the Partnership's interests in the Property.

37.    Plaintiffs also believe that changing management will result in a waste of Partnership assets, as a significant amount of work would be required to transition the

4084231.12

management of the Property to the Third Party Manager, and as the Partnership would have to pay management fees to the Third Party Manager that are not currently being paid to MGRMC.

38.     As a result of the foregoing, Plaintiffs request an Order allowing them or their agents to continue managing the Property until the dissolution and winding up of Partnership affairs is completed.

39.     There is no adequate remedy at law for the relief sought herein.

WHEREFORE, Plaintiffs request judgment against the Defendants as follows:

(a)     on the first cause of action,

 (i)     dissolving the Partnership and ordering an accounting of all of the Partnership's transactions and of all property and money received and paid by Plaintiffs and Defendants respectively;

 (ii)     declaring under section 68 of the New York Partnership Law that there be a winding up of the Partnership;

 (iii)     directing the appointment of a referee to oversee the winding up of the Partnership affairs, the payment of the debts and liabilities of the Partnership, and the division of the surplus assets, in accordance with the Partnership Agreement;

(b)     on the second cause of action, enjoining Defendants and allowing Plaintiffs or their agents to continue managing the Property until the dissolution and winding up of Partnership affairs is completed; and

4084231.12

(c)    awarding Plaintiffs the costs and disbursements of this action, together

with such other and further relief as to this Court seems just and proper.

DATED:  New York, New York
        January 1<u>8</u>, 2008

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By:

Thomas H. Golden (TG-1467)
(A Member of the Firm)

787 Seventh Avenue
New York, New York 10019-6099
tgolden@willkie.com
(212) 728-8000

Attorneys for Plaintiffs

-9-

# EXHIBIT 3

08 CIV 0508

JS 44C/SDNY
REV. 12/2005

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**PLAINTIFFS** Jean Minskoff Grant

**DEFENDANTS** MYCA, LLC and 2220 Equities Management Limited Partnership

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER**

Thomas H. Golden, Willkie Farr & Gallagher
787 Seventh Avenue, New York, NY10019,(212) 728-8000

**ATTORNEYS (IF KNOWN)**

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

Dissolution of a partnership and an injunction.

Has this or a similar case been previously filed in SDNY at any time? No [x] Yes? ☐   Judge Previously Assigned

If yes, was this case Vol.☐ Invol. ☐ Dismissed. No☐ Yes ☐   If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*                    NATURE OF SUIT

**ACTIONS UNDER STATUTES**

| TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |

**CONTRACT**

[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[x] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**

[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**

[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**

[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**

[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**

[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**

[ ] 861 MIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**

[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

**ACTIONS UNDER STATUTES**

**REAL PROPERTY**

[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**CIVIL RIGHTS**

[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**

[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

Check if demanded in complaint:

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $_____ OTHER _____

Check YES only if demanded in complaint
JURY DEMAND: [x] YES ☐ NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

JUDGE _____ DOCKET NUMBER_____

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

*(PLACE AN x IN ONE BOX ONLY)* **ORIGIN**

☒ 1 Original Proceeding    ☐ 2a. Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from (Specify District)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge Judgment

☐ 2b. Removed from State Court AND at least one party is a pro se litigant

*(PLACE AN x IN ONE BOX ONLY)* **BASIS OF JURISDICTION**     *IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1332, 1441)*

☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☐ 3 FEDERAL QUESTION (U.S. NOT A PARTY)    ☒ 4 DIVERSITY

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [x]1 | [ ]1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ]3 | [ ]3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ]5 | [ ]5 |
| CITIZEN OF ANOTHER STATE | [ ]2 | [x]2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ]4 | [ ]4 | FOREIGN NATION | [ ]6 | [ ]6 |

**PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)**

Jean Minskoff Grant
55 Stratford Road
Harrison, NY 10528

**DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)**

MYCA LLC
220 Sunrise Ave., Room 212
Palm Beach, FL 33480

2220 Equities Management Limited Partnership
2200 E. Gossamer Lane
Boise, ID 83706

**DEFENDANT(S) ADDRESS UNKNOWN**
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:    **THIS ACTION SHOULD BE ASSIGNED TO:**    ☒ WHITE PLAINS    ☐ FOLEY SQUARE
(DO NOT check either box if this a PRISONER PETITION.)

DATE 1/18/08    SIGNATURE OF ATTORNEY OF RECORD     ADMITTED TO PRACTICE IN THIS DISTRICT

RECEIPT #         [ ] NO
☒ YES (DATE ADMITTED Mo. **08** Yr. **92** )
Attorney Bar Code # **TG 1467**

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

08 CIV 0510

JS 44C/SDNY
REV. 12/2005

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

PLAINTIFFS    Scorpio 8283 LLC

DEFENDANTS    MYCA, LLC and 2220 Equities Management Limited Partnership

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Thomas H. Golden, Willkie Farr & Gallagher
787 Seventh Avenue, New York, NY10019,(212) 728-8000

ATTORNEYS (IF KNOWN)

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

Dissolution of a partnership and an injunction.

Has this or a similar case been previously filed in SDNY at any time? No ☒ Yes? ☐    Judge Previously Assigned

If yes, was this case Vol.☐ Invol. ☐ Dismissed. No☐ Yes ☐ If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*    NATURE OF SUIT

ACTIONS UNDER STATUTES

| TORTS | | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|

**CONTRACT**

[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[X] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**

[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**

[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**

[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**

[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**

[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**

[ ] 861 HIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**

[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

**REAL PROPERTY**

[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**

[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**

[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

Check if demanded in complaint:

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

DEMAND $ _____ OTHER _____    JUDGE _____ DOCKET NUMBER _____

Check YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

(PLACE AN x IN ONE BOX ONLY)                          **ORIGIN**

[x] 1 Original Proceeding   [ ] 2a. Removed from State Court   [ ] 3 Remanded from Appellate Court   [ ] 4 Reinstated or Reopened   [ ] 5 Transferred from (Specify District)   [ ] 6 Multidistrict Litigation   [ ] 7 Appeal to District Judge from Magistrate Judge Judgment

[ ] 2b. Removed from State Court AND at least one party is a pro se litigant

(PLACE AN x IN ONE BOX ONLY)          **BASIS OF JURISDICTION**          **IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1332, 1441)**

[ ] 1 U.S. PLAINTIFF   [ ] 2 U.S. DEFENDANT   [ ] 3 FEDERAL QUESTION (U.S. NOT A PARTY)   [x] 4 DIVERSITY

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [x]1 | [ ]1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ]3 | [ ]3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [x]5 | [ ]5 |
| CITIZEN OF ANOTHER STATE | [ ]2 | [x]2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ]4 | [ ]4 | FOREIGN NATION | [ ]6 | [ ]6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Scorpio 8283 LLC
56 Ivy Hill Road
Ridgefield, CT 06877

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

MYCA LLC
220 Sunrise Ave., Room 212
Palm Beach, FL 33480

2220 Equities Management Limited Partnership
2200 E. Gossamer Lane
Boise, ID 83706

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:     THIS ACTION SHOULD BE ASSIGNED TO:     [x] WHITE PLAINS     [ ] FOLEY SQUARE
(DO NOT check either box if this a PRISONER PETITION.)

DATE 1/15/08     SIGNATURE OF ATTORNEY OF RECORD     ADMITTED TO PRACTICE IN THIS DISTRICT
                                                     [ ] NO
RECEIPT #                                            [x] YES (DATE ADMITTED Mo. 08 Yr. 92 )
                                                     Attorney Bar Code # TG 1467

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

08 CIV. 0511

JS 44C/SDNY
REV. 12/2005

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

PLAINTIFFS  MLP I and QCR 77 LLC

DEFENDANTS  MYCA, LLC and 2220 Equities Management Limited Partnership

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER

Thomas H. Golden, Willkie Farr & Gallagher
787 Seventh Avenue, New York, NY10019,(212) 728-8000

ATTORNEYS (IF KNOWN)

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

Dissolution of a partnership and an injunction.

Has this or a similar case been previously filed in SDNY at any time? No ☒  Yes? ☐  Judge Previously Assigned

If yes, was this case  Vol.☐  Invol. ☐  Dismissed. No ☐  Yes ☐  If yes, give date _____ & Case No. _____

(PLACE AN [x] IN ONE BOX ONLY)          NATURE OF SUIT

ACTIONS UNDER STATUTES

| TORTS | | | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|---|
| **CONTRACT** | **PERSONAL INJURY** | | **PERSONAL INJURY** | [ ] 610 AGRICULTURE | [ ] 422 APPEAL 28 USC 158 | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 362 PERSONAL INJURY - | | [ ] 620 FOOD & DRUG | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 410 ANTITRUST |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT | | MED MALPRACTICE | [ ] 625 DRUG RELATED | | [ ] 430 BANKS & BANKING |
| [ ] 130 MILLER ACT | LIABILITY | [ ] 365 PERSONAL INJURY | | SEIZURE OF | | [ ] 450 COMMERCE/ICC |
| [ ] 140 NEGOTIABLE | [ ] 320 ASSAULT, LIBEL & | | PRODUCT LIABILITY | PROPERTY | | RATES/ETC |
| INSTRUMENT | SLANDER | [ ] 368 ASBESTOS PERSONAL | | 21 USC 881 | **PROPERTY RIGHTS** | [ ] 460 DEPORTATION |
| [ ] 150 RECOVERY OF | [ ] 330 FEDERAL | | INJURY PRODUCT | [ ] 630 LIQUOR LAWS | [ ] 820 COPYRIGHTS | [ ] 470 RACKETEER INFLU- |
| OVERPAYMENT & | EMPLOYERS' | | LIABILITY | [ ] 640 RR & TRUCK | [ ] 830 PATENT | ENCED & CORRUPT |
| ENFORCEMENT OF | LIABILITY | | | [ ] 650 AIRLINE REGS | [ ] 840 TRADEMARK | ORGANIZATION ACT |
| JUDGMENT | [ ] 340 MARINE | **PERSONAL PROPERTY** | | [ ] 660 OCCUPATIONAL | | (RICO) |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT | | | SAFETY/HEALTH | | [ ] 460 CONSUMER CREDIT |
| [ ] 152 RECOVERY OF | LIABILITY | [ ] 370 OTHER FRAUD | | [ ] 690 OTHER | **SOCIAL SECURITY** | [ ] 490 CABLE/SATELLITE TV |
| DEFAULTED | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | | | | [ ] 810 SELECTIVE SERVICE |
| STUDENT LOANS | [ ] 355 MOTOR VEHICLE | [ ] 380 OTHER PERSONAL | | **LABOR** | [ ] 861 MIA (1395FF) | [ ] 850 SECURITIES/ |
| (EXCL VETERANS) | PRODUCT LIABILITY | | PROPERTY DAMAGE | [ ] 710 FAIR LABOR | [ ] 862 BLACK LUNG (923) | COMMODITIES/ |
| [ ] 153 RECOVERY OF | [ ] 360 OTHER PERSONAL | [ ] 385 PROPERTY DAMAGE | | STANDARDS ACT | [ ] 863 DIWC (405(g)) | EXCHANGE |
| OVERPAYMENT OF | INJURY | | PRODUCT LIABILITY | [ ] 720 LABOR/MGMT | [ ] 863 DIWW (405(g)) | [ ] 875 CUSTOMER |
| VETERANS BENEFITS | | | | RELATIONS | [ ] 864 SSID TITLE XVI | CHALLENGE |
| [ ] 160 STOCKHOLDERS SUITS | | | | [ ] 730 LABOR/MGMT | [ ] 865 RSI (405(g)) | 12 USC 3410 |
| [x] 190 OTHER CONTRACT | | | | REPORTING & | | [ ] 891 AGRICULTURE ACTS |
| [ ] 195 CONTRACT PRODUCT | | | | DISCLOSURE ACT | | [ ] 892 ECONOMIC |
| LIABILITY | | | | [ ] 740 RAILWAY LABOR ACT | **FEDERAL TAX SUITS** | STABILIZATION ACT |
| [ ] 196 FRANCHISE | | | | [ ] 790 OTHER LABOR | [ ] 870 TAXES | [ ] 893 ENVIRONMENTAL |
| | **ACTIONS UNDER STATUTES** | | | LITIGATION | [ ] 871 IRS-THIRD PARTY | MATTERS |
| | | | | [ ] 791 EMPL RET INC | 20 USC 7609 | [ ] 894 ENERGY |
| **REAL PROPERTY** | **CIVIL RIGHTS** | | **PRISONER PETITIONS** | SECURITY ACT | | ALLOCATION ACT |
| [ ] 210 LAND CONDEMNATION | [ ] 441 VOTING | [ ] 510 MOTIONS TO | | | | [ ] 895 FREEDOM OF |
| [ ] 220 FORECLOSURE | [ ] 442 EMPLOYMENT | | VACATE SENTENCE | | | INFORMATION ACT |
| [ ] 230 RENT LEASE & | [ ] 443 HOUSING | | 28 USC 2255 | | | [ ] 900 APPEAL OF FEE |
| EJECTMENT | ACCOMMODATIONS | [ ] 530 HABEAS CORPUS | | | | DETERMINATION |
| [ ] 240 TORTS TO LAND | [ ] 444 WELFARE | [ ] 535 DEATH PENALTY | | | | UNDER EQUAL ACCESS |
| [ ] 245 TORT PRODUCT | [ ] 445 AMERICANS WITH | [ ] 540 MANDAMUS & OTHER | | | | TO JUSTICE |
| LIABILITY | DISABILITIES - | [ ] 550 CIVIL RIGHTS | | | | [ ] 950 CONSTITUTIONALITY |
| [ ] 290 ALL OTHER | EMPLOYMENT | [ ] 555 PRISON CONDITION | | | | OF STATE STATUTES |
| REAL PROPERTY | [ ] 446 AMERICANS WITH | | | | | [ ] 890 OTHER STATUTORY |
| | DISABILITIES -OTHER | | | | | ACTIONS |
| | [ ] 440 OTHER CIVIL RIGHTS | | | | | |

Check if demanded in complaint:

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

DEMAND $_____  OTHER _____    JUDGE _____  DOCKET NUMBER_____

Check YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

(PLACE AN x IN ONE BOX ONLY)                                          **ORIGIN**

[x] 1 Original          [ ] 2a. Removed from    [ ] 3 Remanded from    [ ] 4 Reinstated or    [ ] 5 Transferred from    [ ] 6 Multidistrict    [ ] 7 Appeal to District
      Proceeding              State Court          Appellate Court          Reopened              (Specify District)       Litigation            Judge from
                      [ ] 2b. Removed from State Court                                                                                            Magistrate Judge
                              AND at least one party is a pro se litigant                                                                         Judgment

(PLACE AN x IN ONE BOX ONLY)                          **BASIS OF JURISDICTION**                                    *IF DIVERSITY, INDICATE*
[ ] 1 U.S. PLAINTIFF    [ ] 2 U.S. DEFENDANT    [ ] 3 FEDERAL QUESTION    [x] 4 DIVERSITY        *CITIZENSHIP BELOW.*
                                                      (U.S. NOT A PARTY)                          *(28 USC 1332, 1 441)*

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF DEF | | PTF DEF | | PTF DEF |
|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [x]1 [ ]1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ]3 [ ]3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ]5 [ ]5 |
| CITIZEN OF ANOTHER STATE | [ ]2 [x]2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ]4 [ ]4 | FOREIGN NATION | [ ]6 [ ]6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

MLP I
1350 Avenue of the Americas,
New York, NY 10019

QCR 77 LLC
56 Ivy Hill Road
Ridgefield, CT 06877

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

MYCA LLC
220 Sunrise Ave., Room 212
Palm Beach, FL 33480

2220 Equities Management Limited Partnership
2200 E. Gossamer Lane
Boise, ID 83706

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    [x] WHITE PLAINS    [ ] FOLEY SQUARE
              (DO NOT check either box if this a PRISONER PETITION.)

DATE 1/18/08    SIGNATURE OF ATTORNEY OF RECORD              ADMITTED TO PRACTICE IN THIS DISTRICT
                                                             [ ] NO
RECEIPT #                                                    [x] YES (DATE ADMITTED Mo. 08 Yr. 92 )
                                                             Attorney Bar Code # TG 1467

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

Index No. 0375/2008
SUPREME COURT OF THE STATE NEW YORK
COUNTY OF WESTCHESTER

JEAN MINSKOFF GRANT and
GOTHAM 9 LLC,

Plaintiff(s)

against

ALAN MINSKOFF, ROYANNE MINSKOFF,
JAMES D. STERLINGS, and MYCA,LLC,

Defendant(s)

## Summons
Action not based upon a
Consumer Credit Transaction

Thomas H. Golden
Willkie Farr & Gallagher LLP

Attorney(s) for Plaintiff(s)

Office, Post Office Address and Tel. No.

787 Seventh Avenue
New York, NY 10019-6099
(212)728-8000

**DESCRIPTION USE WITH 1,2 & 3**

- [ ] Black Hair
- [ ] Brown Hair
- [ ] Blonde Hair
- [ ] Gray Hair
- [ ] Red Hair
- [ ] White Hair
- [ ] Balding
- [ ] Mustache
- [ ] Beard
- [ ] Glasses

- [ ] Male
- [ ] Female
- [ ] White Skin
- [ ] Black Skin
- [ ] Yellow Skin
- [ ] Brown Skin
- [ ] Red Skin

- [ ] 14-20 Yrs.
- [ ] 21-35 Yrs.
- [ ] 36-50 Yrs.
- [ ] 51-65 Yrs.
- [ ] Over 65 Yrs.

- [ ] Under 5'
- [ ] 5'0"-5'3"
- [ ] 5'4"-5'8"
- [ ] 5'9"-6'0"
- [ ] Over 6'

- [ ] Under 100 Lbs.
- [ ] 100-130 Lbs.
- [ ] 131-160 Lbs.
- [ ] 161-200 Lbs.
- [ ] Over 200 Lbs.

Other identifying features:

---

## AFFIDAVIT OF SERVICE

State of New York, County of _____ ss:

The undersigned, being duly sworn, deposes and says: that deponent is not a party to the action, is over 18 years of age and resides at

I that on _____ 19 _____ at _____ on

deponent served the within summons _____ defendant

**INDIVIDUAL 1.** [ ] by delivering a true copy of each to said defendant personally; deponent knew the person so served to be the person described as said defendant therein.

**CORPORATION 2.** [ ] a _____ corporation.
by delivering thereat a true copy of each to

personally, deponent knew said corporation so served to be the corporation described in said summons as said defendant and knew said individual to be _____ thereof.

**SUITABLE AGE PERSON 3.** [ ] by delivering thereat a true copy of each to _____ a person of suitable age and discretion. Said premises is defendant's actual place of business dwelling place usual place of abode within the state.

**AFFIXING TO DOOR, ETC. 4.** [ ] by affixing a true copy of each to the door of said premises, which is defendant's actual place of business dwelling place usual place of abode within the state. Deponent was unable, with due diligence, to find defendant or a person of suitable age and discretion thereat, having called there

**MAILING TO RESIDENCE USE WITH 3 OR 4 5A.** [ ] Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to defendant at defendant's last known residence, at

and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

**MAILING TO BUSINESS USE WITH 3 OR 4 5B.** [ ] Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly addressed to defendant at defendant's actual place of business, at

in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant.

Sworn to before me on

.............................................
Print name beneath signature

Index No. 01376/2008

SURPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

JEAN MINSKOFF GRANT and FRANCIS
C. GRANT III,

Plaintiff(s)

against

JOHN ERIC MINSKOFF, MYCA, LLC, THE
ESTATE OF MARJORIE MINSKOFF SCHLEIFER,
STEWART MINSKOFF, and STACEY MINSKOFF-ESSENFELD,

Defendant(s)

## Summons

Action not based upon a
Consumer Credit Transaction

Thomas H. Golden
Wilkie Farr & Gallagher LLP

Attorney(s) for Plaintiff(s)

Office, Post Office Address and Tel. No.

787 Seventh Avenue
New York, NY 10019-6099
(212)728-8000

| DESCRIPTION USE WITH 1, 2 or 3 | | | |
|---|---|---|---|
| ☐ Black Hair | ☐ 51-65 Yrs. | | |
| ☐ Brown Hair | ☐ Over 65 Yrs. | | |
| ☐ Blonde Hair | ☐ Under 5' | | |
| ☐ Gray Hair | ☐ 5'0"-5'3" | | |
| ☐ Red Hair | ☐ 5'4"-5'8" | | |
| ☐ White Hair | ☐ 5'9"-6'0" | | |
| ☐ Balding | ☐ Over 6' | | |
| ☐ Mustache | | | |
| ☐ Male | ☐ Beard | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Glasses | ☐ 100-130 Lbs. |
| ☐ White Skin | ☐ 14-20 Yrs. | ☐ 131-160 Lbs. |
| ☐ Black Skin | ☐ 21-35 Yrs. | ☐ 161-200 Lbs. |
| ☐ Yellow Skin | ☐ 36-50 Yrs. | ☐ Over 200 Lbs. |
| ☐ Brown Skin | | |
| ☐ Red Skin | | |

Other identifying features:

Print name beneath signature

Sworn to before me on

---

# AFFIDAVIT OF SERVICE

State of New York, County of                    ss:

The undersigned, being duly sworn, deposes and says: that deponent is not a party to the action, is over 18 years of age and resides at

That on            19          at

deponent served the within summons                              on

defendant

**INDIVIDUAL**
☐ 1. by delivering a true copy of each to said defendant personally; deponent knew the person so served to be the person described as said defendant therein.

**CORPORATION** a                                                    corporation.
☐ 2. by delivering thereat a true copy of each to

personally, deponent knew said corporation so served to be the corporation described in said summons as said defendant and knew said individual to be                                        thereof.

**SUITABLE AGE PERSON**
☐ 3. by delivering thereat a true copy of each to

a person of suitable age and discretion. Said premises is defendant's–actual place of business  dwelling place  usual place of abode– within the state.

**AFFIXING TO DOOR, ETC.**
☐ 4. by affixing a true copy of each to the door of said premises, which is defendant's –actual place of business  dwelling place:  usual place of abode within the state. Deponent was unable, with due diligence, to find defendant or a person of suitable age and discretion thereat, having called there

**MAILING TO RESIDENCE USE WITH 3 OR 4**
☐ 5A. Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to defendant at defendant's last known residence, at

and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

**MAILING TO BUSINESS USE WITH 3 OR 4**
☐ 5B. Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly addressed to defendant at defendant's actual place of business, at

in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant.

# EXHIBIT 4



001205          002061

At ex parte motion part of
the Supreme Court of the State
of New York, held in and for
the County of New York, at the
Courthouse located at 60 Centre
Street, New York, New York
on the 24th day of January 2008

PRESENT: Hon. _____, J.S.C.

**MOTION SEQUENCE #001**

-----------------------------------x
POST BROADWAY ASSOCIATES          :
a/k/a 59 SOUTH BROADWAY VENTURE,  :
77th QUEENS ASSOCIATES, 82nd-83rd :
STREET VENTURE, HALSTEAD HARRISON AVENUE :
VENTURES,                         :
                                  :
                                  :
                    Plaintiffs,   :
                                  :
-against-                         :
                                  :
MINSKOFF GRANT REALTY &           :
MANAGEMENT CORP.,                 :
                                  :
                    Defendant.    :
-----------------------------------x

Index No. 08-60017
purchased: 1/24/08

**ORDER TO SHOW CAUSE**

Upon the attached Complaint verified on January 23, 2008, and the exhibits thereto and upon the attached Affirmation of Glen Banks executed January 24, 2008,

LET the Defendant, Minskoff Grant Realty & Management Corp. ("MGRMC"), or its attorney, show cause at an Individual Assignment Part 56 of the Supreme Court, New York County, to be held in Room 218 of the County Courthouse, 60 Centre Street, New York, New York on the 5 day of February 2008 or as soon thereafter as counsel can be heard why an Order should not be entered pursuant to CPLR §§ 6301 and 6311 restraining defendant MGRMC, and its officers, directors, employees and agents (A) from taking any action on behalf of any plaintiff (Post Broadway Associates a/k/a 59 South Broadway Venture; 77th Queens Associates; 82nd-83rd Street Venture; and Halstead Harrison Avenue Ventures) or with respect to any property owned

by a plaintiff (49-59 South Broadway, 230-36 East Post Road, White Plains, New York; 116-02/32 Queens Boulevard, Forest Hills, New York; 39-55 Court Street/167-183 Martine Avenue, White Plains, New York; and 270-78 Halstead Avenue, Harrison, New York) or holding itself out as the leasing or managing agent with respect to any of these properties pending the Court's determination of the claim by Plaintiffs for a Declaratory Judgment that the agency relationship between each Plaintiff and MGRMC has terminated and that MGRMC may no longer act or hold itself out as the managing or leasing agent of the property owned by a Plaintiff; (B) from taking any action to destroy or otherwise transfer any of the books, records, documentation, keys, and other property concerning any of the above referenced four properties set forth on Exhibit D to the Verified Complaint that is in the possession, custody or control of MGRMC, its officers, directors, agents or employees; and (C) to turn over said items to Plaintiffs so that each Plaintiff can effectively manage the property it owns or leases.

LET personal service of this Order and the papers on which it is based including the Verified Complaint and exhibits thereto upon defendant MGRMC at its principal place of business at 1350 Avenue of the Americas, New York, New York, on or before January 29, 2008 be deemed good and sufficient service; and it is

FURTHER ORDERED, that all papers submitted in opposition to this Order to Show Cause shall be delivered by hand, or overnight mail to Fulbright & Jaworski L.L.P., Attn: Robert D. Owen, 666 Fifth Avenue, New York, New York, e-mail rowen@fulbright.com, telecopy number (212) 318-3400, not less than two business days prior to the return date of this Order.

ENTER:

_____
J.S.C.

ORAL ARGUMENT
DIRECTED

J.S.C.

# EXHIBIT 5

Robert D. Owen
James Nespole
Glen Banks
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
Telephone:     (212) 318-3000
Telecopier:     (212) 318-3400

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------x
POST BROADWAY ASSOCIATES                          :
a/k/a 59 SOUTH BROADWAY VENTURE,                  :
77th QUEENS ASSOCIATES, 82nd-83rd STREET          :
VENTURE, HALSTEAD HARRISON AVENUE                 :
VENTURES,                                         :
                                                  :          **Index No. _____**
                                Plaintiffs,       :
                                                  :          **VERIFIED COMPLAINT**
-against-                                         :
                                                  :
MINSKOFF GRANT REALTY &                           :
MANAGEMENT CORP.,                                 :
                                Defendant.        :
--------------------------------------------------------------------x

Plaintiffs, by their undersigned attorneys, complain of defendant and allege:

## SUMMARY OF CLAIM

1.      This action is brought by four partnerships, each of which owns a commercial

property in the New York metropolitan area.  Each of the plaintiff partnerships had retained

defendant Minskoff Grant Realty Management Corp. ("MGRMC") as the managing agent and

exclusive leasing agent for the property it owned or leased.

2.      Each of the plaintiffs terminated its principal-agent relationship with MGRMC as

of the end of 2007.  MGRMC, however, has not recognized the termination, continues to take

actions with respect to the properties and, despite requests, has failed to provide Plaintiffs with

the books and records concerning the properties necessary for the new managing and leasing

agent hired by the Plaintiffs to perform its duties with respect to the properties owned by the plaintiffs.

3.      Plaintiffs seek and are entitled to an order (i) pursuant to CPLR 3001, declaring that the agency relationship between each plaintiff and MGRMC has terminated and MGRMC no longer has the authority to take any action either on behalf of a Plaintiff or with respect to a property owned or leased by a Plaintiff; (ii) granting preliminary and permanent injunctive relief restraining MGRMC from taking any further action on behalf of any Plaintiff or with respect to any property owned or leased by a Plaintiff; and (iii) granting preliminary injunctive relief (A) requiring MGRMC to preserve certain documents, books, records and other property it has concerning a Plaintiff, a property owned or leased by a Plaintiff or defendant's actions with respect to any such property and (B) compelling MGRMC to deliver said items to Plaintiffs.

## THE PARTIES

4.      Plaintiff Post Broadway Associates a/k/a 59 South Broadway Venture ("Broadway") is a partnership formed under the laws of the State of New York.

5.      Plaintiff 77th Queens Associates ("Queens") is a partnership formed under the laws of the State of New York.

6.      Court Martine Associates ("Martine") is a partnership formed under the laws of the State of New York.  Court Martine controls a partnership, Plaintiff 82nd-83rd Street Venture ("82nd-83rd"), that also is organized under the laws of the State of New York.

7.      Plaintiff Halstead Harrison Avenue Ventures ("Halstead") is a partnership organized under the laws of the state of New York.

8.      Broadway, Queens, 82nd-83rd and Halstead are collectively referred to herein as the "Partnerships" and each of them is individually referred to as a "Partnership."

9.    Defendant MGRMC is a New York corporation with offices at 1350 Avenue of the Americas, New York, New York.

## THE PROPERTIES

10.    Each of the Partnerships owns or leases a building.

11.    Broadway is the owner of a structure located at 49-59 South Broadway, 230-36 East Post Road, White Plains, New York (the "Broadway Property").

12.    Queens leases a structure located at 116-02/32 Queens Boulevard, Forest Hills, New York (the "Queens Property").

13.    82nd-83rd is the owner of a structure located at 39-55 Court Street/167-183 Martine Avenue in White Plains, New York (the "82nd – 83rd Property").

14.    Halstead is the owner of a structure located at 270-78 Halstead Avenue, Harrison, New York (the "Halstead Property").

15.    Each of the Broadway Property, the Queens Property, the 82nd – 83rd Property and the Halstead Property is a building in which space is rented to various tenants.  These properties are collectively referred to herein as the "Properties" and individually referred to as a "Property."

16.    MGRMC has acted as the managing and exclusive leasing agent for each of the Properties pursuant to purported agreements between MGRMC and the Partnerships.

17.    In its capacity as agent, MGRMC negotiated leases for space on the Properties.  It billed tenants for rents due on leases.  It received payment of rents from tenants and held such monies in a bank account over which MGRMC has the power to disburse funds.  MGRMC also was responsible for the operation and maintenance of the Properties and the payment of bills in connection therewith.

## THE PARTNERSHIPS TERMINATE MGRMC AS AGENT

18.     In the fourth quarter of 2007, at a meeting held after notice was given to all partners, the holders of the majority of the interest in each Partnership determined that (i) effective January 1, 2008, each Partnership would hire Armstrong Realty Management Corp. ("Armstrong") to manage the Property owned or leased by the Partnership; and (ii) the Partnership would instruct MGRMC (A) to cease, effective immediately, all leasing activities for the Properties and (B) to deliver to Armstrong all Partnership assets, keys, records and documents concerning the Properties. A true copy of these minutes is attached hereto as Exhibit A.

19.     The Partnerships thereafter revoked, effective at the end of 2007, any agency agreement between a Partnership and MGRMC. In December, 2007, each Partnership advised MGRMC that the Partnership had elected to terminate the Partnership's relationship with MGRMC at year end and retain the services of a successor management firm effective January 1, 2008. A true copy of these notices is attached hereto as Exhibit B.

20.     MGRMC has refused to recognize that its agency has terminated and the Partnerships no longer want it to act as managing or leasing agent for, or to take action with respect to, any of the Properties.

21.     By letter dated January 11, 2008, counsel for the Partnerships wrote to counsel for MGRMC. The letter stated: (i) the agency relationship between each Partnership and MGRMC and MGRMC's authority as managing and leasing agent of the Properties had terminated on December 31, 2007; (ii) MGRMC should take no further action on behalf of any of the Partnerships, or with respect to any of the Properties; and (iii) MGRMC was to make available for turnover to the Partnerships or their designees certain documents and property (including bank records and keys to space at the Properties) described in a schedule forwarded with the

letter.  A true copy of the letter is attached hereto as Exhibit C and a true copy of the schedule forwarded therewith is attached as Exhibit D.

22.    Counsel for MGRMC responded to the letter by stating that because a principal of MGRMC was a partner in three of the four Partnerships and held a minority interest in such entities, MGRMC's principal would continue to act as managing and leasing agent for the three properties owned by a Partnership in which she had an interest.

23.    MGRMC has not ceased its activities with respect to the Properties.  It continues to act as leasing agent.  It continues to collect rents from tenants.  It continues to exercise control over the bank accounts of the Partnerships.  Accordingly, the Partnerships are in a position where their former agent (i) is holding itself out as having the authority to bind the Partnerships; (ii) is interacting with tenants and collecting rents and (iii) is controlling the bank accounts where such rents are deposited.  The actions of MGRMC have prevented the Partnership's chosen agent, Armstrong, from managing the Properties.

24.    The requested documents and property have not been turned over to the Partnerships or Armstrong.  As a result, Armstrong, does not have access to the books and records that it needs to manage the Properties.

25.    The Partnerships face the danger that MGRMC will bind a Partnership to a long term lease with a tenant who is unacceptable to the Partnership and on terms that are not satisfactory to the Partnership.  MGRMC's continued interaction with tenants could adversely impact the relationship between the Partnerships and tenants on the Properties.  The maintenance and upkeep of the Properties would be impacted by the uncertainty concerning who is the managing agent authorized to act on behalf of the Partnerships.

## FIRST CAUSE OF ACTION
### (Declaratory and Injunctive Relief)

26.     Plaintiffs repeat, reallege and incorporate by reference each of the allegations set forth in paragraphs 1 through 25 above as if set forth in full herein.

27.     Plaintiffs seek and are entitled to declaratory relief that any agency relationship between a Partnership and MGRMC has terminated.

28.     The Partnerships seek preliminary and permanent injunctive relief restraining MGRMC and its principals, officers, directors, employees and agents from taking any further action on behalf of any Partnership or with respect to any Property or to hold itself out as the managing or leasing agent of any Property.   The requested relief is necessary to prevent immediate irreparable injury to each Partnership that would result from MGRMC continuing to hold itself out as an authorized managing agent capable of entering into agreements binding upon one or more of the Partnerships, making decisions with respect to the Properties, collecting rents for the Properties and controlling the funds of the Partnerships.  Such relief also is necessary to insure that the Partnerships' chosen managing agent, Armstrong, is able to effectively manage the Properties.

## SECOND CAUSE OF ACTION
### (Conversion and Replevin)

29.     Plaintiffs repeat, reallege and incorporate by reference herein each of the allegations set forth in paragraphs 1 through 25 as if set forth in full herein.

30.     MGRMC has in its possession, custody or control certain books, records, documentation and other property relating to the Partnerships and the Properties.  Such materials were listed in a schedule to the letter sent by the Partnerships' counsel to MGRMC's counsel.  A copy of this Schedule is attached hereto as Exhibit D.

31.    The Partnerships have a right of possession with respect to the materials listed on Exhibit D that is superior to any right that MGRMC may have.

32.    Despite demand, MGRMC has failed to deliver to the Partnerships the materials listed on Exhibit D.

33.    The Partnerships seek and are entitled to an order directing MGRMC to turn over to the respective Partnerships the property set forth on Exhibit D hereto, including bank records and keys to space on the Properties that is in the possession, custody or control of MGRMC.

WHEREFORE, Plaintiffs pray for judgment:

A.    Declaring that any agency relationship between MGRMC and any Partnership has ended.  Plaintiffs do not currently claim damages to recompense them for injury they suffered as a result of MGRMC's refusal to recognize the termination of its agency.;

B.    Granting preliminary and permanent injunctive relief restraining MGRMC and its officers, directors, agents and employees from taking any further action on behalf of any Partnership or with respect to any Property or to hold itself out as the managing or leasing agent of any Property;

C.    Directing MGRMC to turn over to the respective Partnerships the property set forth on Exhibit D hereto that is in the possession, custody or control of MGRMC;

D.    Granting to Plaintiffs their costs incurred in the prosecution of this action; and

E.     Granting to Plaintiffs such other and further relief as the court may deem just and proper.

Dated: New York, New York
         January 24, 2008

Fulbright & Jaworski L.L.P.
Attorneys for Plaintiffs

By:_____
                Glen Banks

**VERIFICATION**

STATE OF NEW YORK       )
                                  )   ss:
COUNTY OF NEW YORK    )

Royanne Minskoff, being duly sworn, deposes and says:

1.      I am a partner in 2220 Equities Management LLC ("2220 Equities") and hold the majority in interest in that partnership.

2.      2220 Equities is a partner of each of: Post Broadway Associates a/k/a 9 South Broadway Venture ("Broadway"), a partnership formed under the laws of the State of New York; 77th Queens Associates ("Queens"), a partnership formed under the laws of the State of New York; Court Martine Associates ("Martine"), a partnership formed under the laws of the State of New York, which controls a partnership, Plaintiff 82nd-83rd Street Venture ("82nd-83rd"), a partnership organized under the laws of the State of New York; and Halstead Harrison Avenue Ventures ("Halstead"), a partnership organized under the laws of the State of New York.

3.      2220 Equities and MYCCA, LLC ("MYCCA") hold the majority in interest in each of Broadway, Queens, Martine and Halstead. Through their interests in Martine, 2220 Equities and MYCCA indirectly hold the majority in interest and control 82nd-83rd.

80001963.1

4.     I have read the foregoing Verified Complaint.  To my knowledge, the allegations set forth therein are true.  I have reviewed the exhibits to the Verified Complaint and believe them to be true and complete copies of the documents referenced in the Verified Complaint.

_Royanne Minskoff_
Royanne Minskoff

Sworn to before me
this 23rd day of January, 2008

_Mitsy Gonzalez_
Notary Public

## **VERIFICATION**

STATE OF FLORIDA        )
                             )  ss:

COUNTY OF PALM BEACH  )

      Sara Minskoff Allan, being duly sworn, deposes and says:

      1.    I am a partner in MYCA LLC ("MYCA") and hold the majority in interest in that partnership.

      2.    MYCA is a partner of each of: Post Broadway Associates a/k/a 59 South Broadway Venture ("Broadway"), a partnership formed under the laws of the State of New York; 77th Queens Associates ("Queens"), a partnership formed under the laws of the State of New York; Court Martine Associates ("Martine"), a partnership formed under the laws of the State of New York, which controls a partnership, Plaintiff 82nd-83rd Street Venture ("82nd-83rd"), a partnership organized under the laws of the State of New York; and Halstead Harrison Avenue Ventures ("Halstead"), a partnership organized under the laws of the State of New York.

      3.    MYCA and 2220 Equities Management LP ("2220 Equities') hold the majority in interest in each of Broadway, Queens, Martine and Halstead. Through their interests in Martine, 2220 Equities and MYCA indirectly hold the majority in interest and control 82nd-83rd.

4.      I have read the foregoing Verified Complaint.  To my knowledge, the allegations set forth therein are true.  I have reviewed the exhibits to the Verified Complaint and believe them to be true and complete copies of the documents referenced in the Verified Complaint.

_____
Sara Minskoff Allan

Sworn to before me
this 23 day of January, 2008

LINETTE M. FRASH
Comm# DD0502855
Expires 1/21/2010
Bonded thru (800)432-4254
Florida Notary Assn., Inc.

_____
Notary Public

Exhibit A

# 59 South Broadway Venture

## Minutes of Partnership Meeting
## Friday, November 30, 2007

A meeting of the partners via teleconference was called to order on November 30, 2008 at 2.39pm EST.

The following partners were present:

Royanne Minskoff (2220 Equities Management LP)

Sara Minskoff Allan (MYCA, LLC)

The meeting was chaired by Robb Allan on behalf of MYCA, LLC.

Mr. Allan presented a report on the status of legal representation of the partnership.

The partners reviewed and discussed a management proposal provided by Armstrong Realty Management, Inc.

Royanne Minskoff presented a motion to:

- hire Armstrong Realty Management Corp. effective January 1, 2008;
- instruct Minskoff Grant Realty and Management Corp. (MGRMC) to deliver to Armstrong Realty Management Corp all partnership assets, keys, records, and documents by December 31, 2007;
- instruct MGRMC to cease all leasing activity effective immediately.

The motion was seconded by Sara Minskoff Allan and passed unanimously.

The meeting adjourned at 2.44pm EST.

Respectfully,


Robb Allan

# 77th Queens Associates

## Minutes of Partnership Meeting
## Friday, November 30, 2007

A meeting of the partners via teleconference was called to order on November 30, 2008 at 3.34pm EST.

The following partners were present:

Royanne Minskoff (2220 Equities Management LP)

Sara Minskoff Allan (MYCA, LLC)

Michael Breede (on behalf of QCR 77 LLC)

The meeting was chaired by Robb Allan on behalf of MYCA, LLC.

Mr. Allan presented a report on the status of legal representation of the partnership.

The partners reviewed and discussed a management proposal provided by Armstrong Realty Management, Inc.

Robb Allan presented a motion to:

- hire Armstrong Realty Management Corp. effective January 1, 2008;
- instruct Minskoff Grant Realty and Management Corp. (MGRMC) to deliver to Armstrong Realty Management Corp all partnership assets, keys, records, and documents by December 31, 2007;
- instruct MGRMC to cease all leasing activity effective immediately.

The motion was seconded by Royanne Minskoff and passed by a vote of 58% in equity of the partners attending.

The meeting adjourned at 3.59pm EST.

Respectfully,


Robb Allan

# 82nd-83rd Street Venture
# Court Martine Associates

## Minutes of Partnership Meetings
## Friday, November 30, 2007

A meeting of the partners of Court Martine Associates via teleconference was called to order on November 30, 2008 at 3.06pm EST.

The following partners were present:

Royanne Minskoff (2220 Equities Management LP)

Sara Minskoff Allan (MYCA, LLC)

Michael Breede (Scorpio 8283 LLC)

The meeting was chaired by Robb Allan on behalf of MYCA, LLC.

Mr. Allan moved to nominate Royanne Minskoff to represent Court Martine Associates at a subsequent meeting of 82nd-83rd Street Venture. Mr. Breede seconded the motion. The motion passed unanimously.

Due to misunderstanding, the motion was re-moved by Robb Allan and seconded by Royanne Minskoff. The motion passed with 2 in favor and 1 opposed.

After further discussion, Royanne Minskoff moved to rescind the previous motion and Sara Minskoff Allan seconded the motion to rescind. The motion to rescind passed unanimously.

The meeting adjourned at 3.12pm EST.

❋

A meeting of the partners of 82nd-83rd Street Venture via teleconference was called to order on November 30, 2008 at 3.12pm EST.

The following partners were present:

Royanne Minskoff

Sara Minskoff Allan

Michael Breede (Pisces 8283 LLC)

Mr. Allan presented a report on the status of legal representation of the partnership.

The partners reviewed and discussed a management proposal provided by Armstrong Realty Management, Inc.

Robb Allan presented a motion to:

- hire Armstrong Realty Management Corp. effective January 1, 2008;
- instruct Minskoff Grant Realty and Management Corp. (MGRMC) to deliver to Armstrong Realty Management Corp all partnership assets, keys, records, and documents by December 31, 2007;
- instruct MGRMC to cease all leasing activity effective immediately.

The motion was seconded by Royanne Minskoff. The motion passed by a vote of 89% in equity of the partners attending.

The meeting was adjourned at 3.28pm EST.

Respectfully,


Robb Allan

# Halstead Harrison Associates

## Minutes of Partnership Meeting
## Friday, November 30, 2007

A meeting of the partners via teleconference was called to order on November 30, 2008 at 3.06pm EST.

The following partners were present:

Royanne Minskoff (2220 Equities Management LP)

Sara Minskoff Allan (MYCA, LLC)

Jean Grant

The meeting was chaired by Robb Allan on behalf of MYCA, LLC.

Mr. Allan presented a report on the status of legal representation of the partnership.

The partners reviewed and discussed a management proposal provided by Armstrong Realty Management, Inc.

Royanne Minskoff presented a motion to:

- hire Armstrong Realty Management Corp. effective January 1, 2008;
- instruct Minskoff Grant Realty and Management Corp. (MGRMC) to deliver to Armstrong Realty Management Corp all partnership assets, keys, records, and documents by December 31, 2007;
- instruct MGRMC to cease all leasing activity effective immediately.

The motion was seconded by Sara Minskoff Allan and passed by a vote of 66% in equity of the partners attending.

The meeting adjourned at 3.15pm EST.

Respectfully,


Robb Allan

Exhibit B

# POST BROADWAY ASSOCIATES

December 11, 2007

*Via email and Federal Express*

Jean Grant
Minskoff Grant Realty & Mgmt. Co.
1350 Avenue of the Americas
New York, NY 10019

**Subject: replacement of property management and leasing services**
**Post Broadway Associates, aka 59 South Broadway Venture**

Dear Ms. Grant:

Please be advised that, pursuant to a vote of the partnership at Post Broadway Associates, we hereby inform you that the partnership has elected to retain the services of a successor management firm (Armstrong Realty Management, Corp.) and leasing firm, effective January 1, 2008.

This advice is not an acknowledgment that the partnership is bound by any of the purported management and leasing agreements that your office claims to have with the partnership. Among other things, despite repeated requests, your office has failed to provide these agreements to the partners.

Please assemble and be prepared to deliver all books, electronic records, checks, funds, bank statements, leases, related correspondence, and other partnership records and property to us or to our designated agents at the end of the month of December, 2007. You or your accountants should ensure that you retain copies of such documents as you consider necessary to prepare a final accounting of your services to the partnership.

Please acknowledge receipt of this letter at your early convenience.

Sincerely,


_____          _____
Sara Minskoff Allan                       Royanne Minskoff
Partner                                   Partner


cc:    Robb Aley Allan
       Alan Minskoff

# 77TH QUEENS ASSOCIATES

December 11, 2007

*Via email and Federal Express*

Jean Grant
Minskoff Grant Realty & Mgmt. Co.
1350 Avenue of the Americas
New York, NY 10019

**Subject: replacement of property management and leasing services**
**77th Queens Associates**

Dear Ms. Grant:

Please be advised that, pursuant to a vote of the partnership at 77th Queens Associates, we hereby inform you that the partnership has elected to retain the services of a successor management firm (Armstrong Realty Management, Corp.) and leasing firm, effective January 1, 2008.

This advice is not an acknowledgment that the partnership is bound by any of the purported management and leasing agreements that your office claims to have with the partnership. Among other things, despite repeated requests, your office has failed to provide these agreements to the partners.

Please assemble and be prepared to deliver all books, electronic records, checks, funds, bank statements, leases, related correspondence, and other partnership records and property to us or to our designated agents at the end of the month of December, 2007. You or your accountants should ensure that you retain copies of such documents as you consider necessary to prepare a final accounting of your services to the partnership.

Please acknowledge receipt of this letter at your early convenience.

Sincerely,

_____        _____
Sara Minskoff Allan                     Royanne Minskoff
Partner                                 Partner

cc:     Robb Aley Allan
        Alan Minskoff
        Michael Breede
        Dr. James Sterling

220 SUNRISE AVENUE, PALM BEACH, FLORIDA 33480 • 561.832.4013 VOICE • 561.832.3960 FAX

# COURT MARTINE ASSOCIATES

December 11, 2007

*Via email and Federal Express*

Jean Grant
Minskoff Grant Realty & Mgmt. Co.
1350 Avenue of the Americas
New York, NY 10019

**Subject:  replacement of property management and leasing services**
            **Court Martine Associates**

Dear Ms. Grant:

Please be advised that, pursuant to a vote of the partnership at Court Martine Associates, we hereby inform you that the partnership has elected to retain the services of a successor management firm (Armstrong Realty Management, Corp.) and leasing firm, effective January 1, 2008.

This advice is not an acknowledgment that the partnership is bound by any of the purported management and leasing agreements that your office claims to have with the partnership. Among other things, despite repeated requests, your office has failed to provide these agreements to the partners.

Please assemble and be prepared to deliver all books, electronic records, checks, funds, bank statements, leases, related correspondence, and other partnership records and property to us or to our designated agents at the end of the month of December, 2007. You or your accountants should ensure that you retain copies of such documents as you consider necessary to prepare a final accounting of your services to the partnership.

Please acknowledge receipt of this letter at your early convenience.


Sincerely,



_____                    _____
Sara Minskoff Allan                                 Royanne Minskoff
Partner                                             Partner


cc:     Robb Aley Allan
        Alan Minskoff
        Stacey Essenfeld
        Michael Breede

# HALSTEAD HARRISON AVENUE VENTURE

December 11, 2007

*Via email and Federal Express*

Jean Grant
Minskoff Grant Realty & Mgmt. Co.
1350 Avenue of the Americas
New York, NY  10019

**Subject:  replacement of property management and leasing services**
           **Halstead Harrison Avenue Venture**

Dear Ms. Grant:

Please be advised that, pursuant to a vote of the partnership at Halstead Harrison Avenue Venture, we hereby inform you that the partnership has elected to retain the services of a successor management firm (Armstrong Realty Management, Corp.) and leasing firm, effective January 1, 2008.

This advice is not an acknowledgment that the partnership is bound by any of the purported management and leasing agreements that your office claims to have with the partnership.  Among other things, despite repeated requests, your office has failed to provide these agreements to the partners.

Please assemble and be prepared to deliver all books, electronic records, checks, funds, bank statements, leases, related correspondence, and other partnership records and property to us or to our designated agents at the end of the month of December, 2007. You or your accountants should ensure that you retain copies of such documents as you consider necessary to prepare a final accounting of your services to the partnership.

Please acknowledge receipt of this letter at your early convenience.

Sincerely,


_____         _____
Sara Minskoff Allan                              Royanne Minskoff
Partner                                          Partner


cc:    Robb Aley Allan
       Alan Minskoff

Exhibit C

# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
666 FIFTH AVENUE, 31ST FLOOR
NEW YORK, NEW YORK 10103-3198
WWW.FULBRIGHT.COM

ROWEN@FULBRIGHT.COM
DIRECT DIAL: (212) 318-3070

TELEPHONE:    (212) 318-3000
FACSIMILE:    (212) 318-3400

January 11, 2008

BY TELECOPIER TO
212-728-8111 AND VIA E-MAIL

Thomas H. Golden, Esq.
Wilkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10109-6099

     Re:   Minskoff Grant Realty & Management Company

Dear Mr. Golden:

     We are counsel to each of Post Broadway Associates a/k/a 59 South Broadway Venture, 77th Queens Associates, 82nd–83rd Street Venture (and its sub partnership Court Martine Associates) and Halstead Harrison Avenue Venture. Each of these entities is a partnership (collectively referred to herein as the "Partnerships") and each partnership owns a property (collectively referred to herein as the "Properties") in the New York metropolitan area.

     Pursuant to Real Estate Management Agreements (the "Management Agreements") certain persons acting in the name of each of the Partnerships retained Minskoff Grant Realty & Management Corp. ("MGRMC") as managing agent and exclusive leasing agent for the property owned by the partnership. We understand that you represent MGRMC.

     Each of the Partnerships held a meeting during the fourth quarter of 2007 at which the majority in interest of the partnership agreed that: (i) effective January 1, 2008, the partnership would hire Armstrong Realty Management Corp. ("Armstrong") to manage the property owned by the partnership; and (ii) the partnership would advise MGRMC of this change and would instruct MGRMC (A) to cease all leasing activities for that property effective immediately and (B) to deliver to Armstrong by December 31, 2007 all Partnership assets, keys, records and documents.

     In December 2007, each of the Partnerships advised MGRMC of the action that had been taken and instructed MGRMC that Armstrong would begin management of the partnership's property on January 1, 2008. MGRMC was directed to cease activities with respect to the Properties. MGRMC, however, has refused to recognize that its agency has been terminated and continues to hold itself out as the managing agent and leasing agent of the Properties, purports to continue to act as such and has refused to deliver to Armstrong, the books, records, documents

Thomas H. Golden, Esq.
January 11, 2008
Page 2

and other materials concerning the Properties necessary for Armstrong to perform its duties as managing agent.

When we spoke earlier this week, you suggested that the Partnerships and MGRMC enter into a standstill agreement under which MGRMC would continue to manage the Properties while the parties discussed a resolution of their differences and a possible buy out of the interests of one or more of the parties. Our clients have no interest in a standstill. They have revoked MGRMC's authority to continue to act as agent for the Properties. Our clients want to proceed with the transition to a new agent for the Properties.

The agency relationship between each Partnership and MGRMC ended on December 31, 2007. MGRMC is not authorized to take any further action on behalf of any partnership or with respect to any property owned by a partnership. Please confirm by close of business on January 14, 2008 that MGRMC will not take any such action and will no longer hold itself out as an agent for any of the Properties.

Each partnership demands that MGRMC deliver at the direction of the partnership, or make available for pick up by the partnership's agent, the documents and property listed on Schedule A hereto as well as such additional documents that the Partnerships may request after review of the documents listed on Schedule A. These materials are necessary for Armstrong to be able to manage the Properties.

We would like to arrange for representatives of the Partnerships to come to MGRMC's offices on Wednesday, January 16 at 10 a.m. (or such other mutually agreeable time next week that MGRMC might propose) to discuss the logistics of the turn over of the documents and materials, including the production of data kept in electronic format. Please confirm by the close of business on January 14, 2008 when such meeting will occur and that MGRMC will use commercially reasonable efforts to turn over the requested documents and materials on or before January 18, 2008. We would be amenable to a rolling production of the requested documents commencing as soon as possible.

In the absence of the requested confirmations, the Partnership will take action to obtain the appropriate relief.

We trust that you are aware of the well established rule of law that a principal, at any time, has the right to terminate an agent and revoke the agent's authority. Moreover, we believe that MGRMC currently has no enforceable contract with any partnership that can be breached. *See* N.Y. General Obligation Law 5-903(2), *Guerro v. West 23rd Street Reality, LLC*, 846 N.Y.S.2d 41 (1st Dep't 2007) and *Harris v. Adams & Co. Real Estate Inc.*, 310 N.Y.S.2d 258 (Civ. Ct. N.Y. Co. 1970). Even if there were such an enforceable agreement, it would not give MGRMC the right to continue as managing agent when the Partnerships have chosen to end their respective relationships with MGRMC.

Thomas H. Golden, Esq.
January 11, 2008
Page 3


     Given that there can be no dispute that MGRMC's agency for the Partnerships has ended, we hope MGRMC will behave in a professional manner in the transition to the new agent. We hope all parties and counsel can work to effectuate that transition.

Very truly yours,

Robert D. Owen

cc:    Sara Minskoff Allan
       Alan Minskoff
       Royanne Minskoff
       Robb Allan

Exhibit D

<u>Schedule A</u>

<u>Instructions</u>

A.     The term "Partnerships" means, collectively, Post Broadway Associates a/k/a 59 South Broadway Venture, 77th Queens Associates, 82nd-83[rd] Street Venture (and its sub partnership Court Martine Associates) and Halstead Harrison Avenue Venture, each of which is referred to as a "Partnership."

B.     The term "MGRMC" means Minskoff Grant Realty & Management Corp.

C.     The term "Properties" means, collectively, the structures at 49-59 South Broadway/230-36 East Post Road in White Plains, New York, at 116-02/32 Queens Boulevard in Forest Hills, New York, at 270-78 Halstead Avenue in Harrison New York; and at 39-55 Court Street/167-183 Martine Avenue in White Plains, New York, each of which is referred to as a "Property."

D.     Except with respect to items 13, 14 and 23 through 26, the below requests concern documents created after January 1, 2002. We may require documents created prior to January 1, 2002 upon receipt and inspection of the documents requested, but as a first request we will limit the time scope to the aforesaid.

E.     These requests use the term "document" broadly to encompass data that might exist in electronic form, such as information stored in a computer, its hard drive or memory or on any memory card, disc, tape or any other medium on which information may be stored. Our firm's technologists can be of substantial assistance in the collection and transfer of electronic information.

<u>Requested Documents</u>

1.     Any financial statement for any Partnership or pertaining to any Property, including, but not limited, to:

    (A)     Any income statement or statement of profit and loss;

    (B)     Any balance sheet or statement of assets and/or liabilities;

    (C)     Any statement prepared by a auditor or accountant;

    (D)     Any cash flow analysis; or

    (E)     Any monthly or fiscal year trial balance.

2.     Any monthly operating report concerning any Partnership or any Property.

3.     Any budget or budget variance concerning any Partnership or any Property.

4.     Any account payable register or account receivable register concerning any Partnership or any Property.

5.      Any appraisal or valuation concerning any Partnership or any Property.

6.      Any tax return for a Partnership.

7.      Any record concerning a relationship with any bank or other financial institution concerning any Partnership or Property, including but not limited, to:

    (A)      Any account statement;

    (B)      Any check register or cancelled check;

    (C)      Any credit agreement or loan; or

    (D)      Any record relating to repayment of any borrowed money.

8.      Any tenant lease pertaining to any portion of any Property, any amendment, modification or adjustment to any such lease (including without limitation any tenant assignments and terminations/releases) and any abstracts thereof.

9.      Any Certificates of Occupancy, certificates of insurance coverage and other related building permits or licenses obtained by tenants and required by owners.

10.     Any record concerning payments made by a tenant, any defaults in payment by a tenant or any claim made or threatened by a tenant concerning any lease or Property.

11.     Any notice sent to a tenant concerning a default under the tenant's lease.

12.     Any insurance policy for any Property.

13.     Any document concerning a tax assessment on a Property or the payment of tax on a Property.

14.     Any mortgage on a Property.

15.     Any lease for the ground on which a Property is located with any amendments or modifications thereto.

16.     Any existing brokerage contract or service contract concerning any Property.

17.     Any contract involving more than $10,000, or for a term of more than one year, on which a Partnership may be liable or which may allow a contract party to place a lien on a Property.

18.     The general ledger for a Partnership or Property and any journal from which entries were made in such general ledger.

19.     Any key to any portion of any Property.

20. Any advertisement concerning any space for rent at any Property.

21. Any document concerning a communication with any party who has expressed an interest in renting space at a Property that is currently vacant or will soon become vacant.

22. Any document concerning lease extensions, renewals, or modifications being discussed with any tenant at any Property.

23. Any environmental report or survey for any Property.

24. Any engineering report concerning any Property.

25. Any notices of violation or other notice from the federal, state or local government that concerns any Property.

26. The title documents and survey for each Property.

27. Warranties for any HVAC, mechanical equipment, alarms, fire suppression equipment and regulating agency certificates of inspections.

# EXHIBIT 6

CourtAlert System                                                    Page 1 of 3



| Court Fees/ Rules | Forms | Links | New User | Additional Users from Your Firm |

**Kelly (Akin Gump Strauss Hauer &  Feld)**

Logout

◄⋯ Hide Sidebar

 Print This Page

# Case Snapshot:

Client number:   **680289**      Client matter #:   0003
Lawyer Name:   M. Lockard

[ Update client information ]      [ Remove this case from my approved watch list ]

### Civil Case Index Number 600217/08, County of New York.

## POST BROADWAY ASSOCIATES vs MINSKOFF GRANT

Specially prepared for Akin Gump Strauss Hauer & Feld:

**My CourtAlert activities on this Case.**

**NY County Clerk Information**

Court Appearances
Motion 1 Return Date: 2/5/2008 Relief Sought: PREL INJUNCTION/TEMP REST ORDR
Full title of the case
Attorney information

### Case Particulars:

This case is ACTIVE

Date of Entry to the computer system: 1/24/2008, Case assigned to the judge Hon. LOWE,
RICHARD B. III, Part: 55M, based on the case computer category of COMMERCIAL CASES.
You can find further judge information here.

RJI File Date: 1/24/2008

Action Type: OTHER COMMERCIAL

Action Description: EXPARTE

Go back to top of the page

### Court Appearances:

| Sequence # | Appearance Date | Appearance Type | Appearance Part | Action | Comment 1 | Comment 2 |
|---|---|---|---|---|---|---|
| 1 | 2/5/2008 | Initial (First Time On) | IAS PRELIMINARY CONFERENCE 56 | PRELIMINARY CONFERENCE HELD | - | - |
| 2 | 6/12/2008 | Trial | COMPLIANCE CONFERENCE 56 | - | 2:30 | - |

Go back to top of the page

## Motions Particulars:

Motion #: 1 Motion Return Date: 2/5/2008 Motion Part: IAS MOTION PART 56 Relief Sought:
PREL INJUNCTION/TEMP REST ORDR
Motion filing attorney: FULBRIGHT & JAWORSKI
Judge: LOWE, RICHARD B. III
Order Date: None
Appearance for this motion:

| Motion # | Sequence # | Appearance Date | Appearance Type | Appearance Part | Action | Comment 1 | Comment 2 |
|---|---|---|---|---|---|---|---|
| 1 | 1 | 2/5/2008 | - | IAS MOTION PART 56 | FULLY SUBMITTED | 56M | - |

Go back to top of the page

## Full Title of the case:

### Plaintiff:

POST BROADWAY ASSOCIATESA/K/A 59 SOUTH BDWAY VENTURES, 77TH QUEENS
ASSOCIATES, 82ND-83RD STREET VENTURES, HALSTEAD HARRISON AVE VENTURES

### Defendant:

MINSKOFF GRANTREALTY & MANAGEMENT CORP.,

Go back to top of the page

## Attorneys of the case:

### Plaintiff:

For another client
Attorney of Record: Law Firm FULBRIGHT & JAWORSKI
666 FIFTH AVENUE
NEW YORK, NEW YORK
212 318-3000

**Defendant:**

For another client
Attorney of Record: Law Firm WILLKIE FARR & GALLAGHER LLP
787 SEVENTH AVENUE
NEW YORK, NEW YORK
1-212 728-8000

No Comments/Subpoenaed Records for this case

NY County Clerk Information

Go back to top of the page

© 1999 - 2002 CourtAlert.com Inc, All rights reserved.
Back to top   CourtAlert Home

# New York County Index Number 600217/08.

Specially prepared for Akin Gump Strauss Hauer & Feld:

## <u>My CourtAlert activities on this Case.</u>

### Plaintiff:

59 SOUTH BROADWAY VENTURE

77TH QUEENS ASSOCIATES

82ND 83RD STREET VENTURE

HALSTEAD HARRISON AVE VENTURES

POST BROADWAY ASSOCIATES

### Defendant:

MINSKOFF GRANT REALTY & MGMT

### Detail Information:

Case Type: OTHER

Index number purchased on: 1/24/2008

RJI fee paid on: 1/24/2008

## Attorneys of the case (as per County Clerk Database):

### Plaintiff:

FULBRIGHT & JAWORSKI
666 FIFTH AVENUE
NEW YORK, NEW YORK 10103
212 318-3000

### Defendant:

WILLKIE FARR & GALLAGHER LLP
787 SEVENTH AVENUE
NEW YORK, NEW YORK 10019
1-212 728-8000

### Minutes information:

| Date | Minutes |
| --- | --- |

CourtAlert System

| 1/29/2008 | AFFIDAVIT OF SERVICE |
| 2/7/2008 | PRELIMINARY CONFERENCE ORDER |

No Comments/Subpoened Records for this case

Go to Post-RJI case snapshot

© 2007 CourtAlert.com Inc, All rights reserved.
Back to top   CourtAlert Home

# EXHIBIT 7

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x
                                      :

POST BROADWAY ASSOCIATES A/K/A 59
SOUTH BROADWAY VENTURE, 77TH         :
QUEENS ASSOCIATES, 82ND - 83RD
STREET VENTURE, HALSTEAD         :
HARRISON AVENUE VENTURES,
                                        :

                     Plaintiffs,     :         Index No. 08-600217
                                     (Lowe, J.)
         - against -       :

                                          :
MINSKOFF GRANT REALTY &
MANAGEMENT CORP.,

                   Defendant.

------------------------------------------------------------x

<u>AFFIDAVIT OF MICHAEL EDWARD BREEDE</u>

STATE OF CONNECTICUT)
                  )    ss.:
COUNTY OF FAIRFIELD   )

MICHAEL EDWARD BREEDE, being duly sworn, states as follows:

        1.      I am the husband of Patricia Breede. My wife is the sole trustee of the Maggie

P. Minskoff QTIP Trust, which is the sole member of both QCR 77 LLC and Scorpio 8283 LLC. My

wife is also the sole trustee of the Maggie P. Minskoff Credit Shelter Trust which is the sole member

of Pisces 8283 LLC. QCR 77 LLC, Scorpio 8283 LLC, and Pisces 8283 LLC are limited liability

companies that own partnership interests in various real estate partnerships involved in this dispute.

QCR 77 LLC is a partner in 77th Queens Associates; Scorpio 8283 LLC is a partner in Court-Martine

Associates which, in turn, is a partner in 82nd - 83rd Street Venture; and Pisces 8283 is a partner in 82

- 83rd Street Venture. For the past several years, I have served as my wife's representative in matters

related to these partnerships and other partnerships in which she has an interest.

2.      Since at least January 2002, Jean Minskoff Grant, along with her husband Francis C. Grant III (collectively, the "Grants"), have been managing the properties of 77th Queens Associates, 82 - 83rd Street Venture, and Halstead Harrison Avenue Venture (the "Properties" and the "Partnerships," respectively) in addition to the properties of other partnerships in which my wife or other members of her family share interests.

3.      The Grants and Minskoff Grant Realty & Management Corp. ("MGRMC") have done an excellent job managing the Properties. They have been managing them efficiently, and have also introduced a number of innovations that have increased profitability, enhanced reporting, and generally improved the management of the properties. Among other things, MGRMC has worked to eliminate "inter-property loans" that were necessitated by the poor practices of the prior managers, decreased arrears, increased security deposits, and decreased vacancies. MGRMC has also leveraged its banking relationships to obtain favorable mortgages for the Partnerships with debt and favorable interest rates for the Partnerships. MGRMC has also improved the leases used by the Partnerships, and has attracted national retail establishments, including CVS and Starbucks, as tenants.

4.      The Grants and MGRMC have also kept the partners apprised of their management efforts, including sending detailed monthly property and management reports and quarterly reports on each Property to all partners. Those reports inform the partners about bank account balances, payments and receivables, monthly rent roll, and include a status report on each Property.

5.      The Grants and MGRMC have also consistently sought the approval of the partners before proceeding with any lease negotiations, and have developed an interactive process with partners of each Partnership regarding proposed leases. This process includes an analysis of

each proposed tenant's viability along with proposed lease terms. MGRMC has presented an analysis to the applicable partners for approval before proceeding with lease negotiations. This has avoided the expenditure of unnecessary legal fees on the negotiation of leases that would not ultimately be approved.

6.    Over the years, there has been a steady deterioration in the relationships among the partners in the three Partnerships, and the partners (and their spouses) have divided into camps. One camp is comprised of me and my wife along with the Grants. The other camp is comprised of Sara Minskoff Allan, Robb Allan, Alan Minskoff, and Royanne Minskoff. Because of this deterioration, there has been broad recognition among those people, as well as others, that the Partnerships could not continue to operate constructively in their present form. As a result, there have been periodic efforts to negotiate some framework for dissolving the Partnerships and reallocating their assets among the partners. In late 2007 there were further efforts toward a negotiation, but these efforts did not go very far.

7.    Also in late 2007, a handful of partners in the Partnerships (the "Revoking Partners") embarked on an effort to remove MGRMC as manager of the Properties and replace MGRMC with Armstrong Realty Management, Corp. ("Armstrong"). On November 30, 2007, at a meeting of one of the Partnerships, Robb Allan (as a representative of MYCA, LLC) raised the issue of replacing MGRMC with Armstrong. I repeatedly voiced serious concerns on behalf of QCR 77 LLC, Scorpio 8283 LLC, and Pisces 8283 LLC regarding the ramifications of terminating a contract with MGRMC and with respect to Armstrong's qualifications. Mr. Allan responded by assuring me that "obviously a management agreement [with Armstrong] needs to be circulated to members for approval prior to any signature. So we have some time between now and then." A transcript of the remarks made at the meeting is attached as Exhibit A. Despite Mr. Allan's assurance, I was not

provided with a copy of the proposed agreement with Armstrong, and there was no further discussion at the partnership level about the matter.

8.    I did not receive a copy of any documents concerning the purported agreement with Armstrong until January 30, 2008.

9.    I believe that MGRMC's management of the Properties has been highly competent and cost-effective. I believe that MGRMC has done an excellent job managing the Properties and is far better-suited than Armstrong to manage the Properties. Finally, I believe that a change in property management will disrupt the management activities and increase management costs. This is particularly inappropriate given that various partners have been discussing the possibility of a "realignment" of interests that could result in the transfer of one or more of the Partnerships to partners who strongly prefer MGRMC over Armstrong.

10.    Neither my wife nor I were consulted regarding the filing of this action, and we object strenuously to its having been filed. We believe that action will not benefit the Partnerships but instead was intended by certain partners to further their own interests in disputes with other partners.

MICHAEL EDWARD BREEDE

Sworn to before me this
_/_ day of February, 2008

Notary Public
6-30-10

# EXHIBIT A

| | |
|---|---|
| *Rob Allan:* | Sorry. I'm going to have to repeat that. This is a partnership meeting of 77ᵗʰ Queens Associates. |
| | It's November 30ᵗʰ, 2007 3:34 P.M. East Coast time. The notice for this meeting was e-mailed to all of the partners on November 25ᵗʰ. The agenda that was proposed for this meeting was to discuss the status of current management and legal services. |
| | I'd like to start by calling the roll. On behalf of 2220 Equities Management LLP _____ Minskoff. |
| *Royanne Minskoff:* | Present. |
| *Rob Allan:* | On behalf of Minskoff Limited Partnership One, Jean Grant. |
| *Michael Breedy:* | Not present. |
| *Rob Allan:* | Present. On behalf of Mica LLC, Sara Minskoff Allan. |
| *Sara Minskoff* : | Present. |
| *Rob Allan:* | On behalf of – nope; wrong. QCR 77 LLC. |
| *Michael* : | Michael Breedy present. |
| *Rob Allan:* | I will take the two items on the agenda out of order a little bit and talk a little bit about the legal services for the partnership. |
| | We had a partnership meeting February to discuss legal representation of the partnership. As I recall at that time the partners approved a change in the legal representation; designated Royanne and myself to represent the partnership in discussion with an alternative law firm. |
| | _____ the time I believe Delbello was the firm that we recommended. Subsequent to the meeting an event occurred at Delbello that caused us to withdraw them as a candidate. I think I e-mailed everybody that one of the partners was indicted. _____ everybody's confidence. |
| | But having said that, we then interviewed Thelen Reid, which is where David Olisoff currently is. As everybody knows, David Olisoff has represented these partnerships in the past and we agreed to engage him. So, Thelen Reid is now representing this partnership. Is there any further information we need to have on this legal issue? |

**Michael Breedy:**    No, I think that's correct. This is Michael Breedy. That's correct. Is there any question about representation?

**Rob Allan:**    I'm sorry?

**Michael Breedy:**    Is there any question about the legal representation by Thelen Reid? Why was this brought up as part of the agenda for this meeting?

**Rob Allan:**    Status report – we haven't had a partnership meeting since.

**Michael Breedy:**    Oh, so you're just memorializing that.

**Rob Allan:**    I think in the interest of the partners knowing what's going on in their own property that it's worth giving them a report. So it's simply a matter of bringing you all up to speed.

**Michael Breedy:**    Okay. One quick question. Is this recording just audio or is it available by written transcript?

**Rob Allan:**    It's only audio. I mean I suppose we could hire somebody to transcribe it.

**Michael Breedy:**    Okay. How long was that good for?

**Rob Allan:**    It's good for 90 days on the web page where it's posted.

**Michael Breedy:**    I'm sorry. Say that again.

**Rob Allan:**    It's good for 90 days on the web site.

**Michael Breedy:**    Oh. Do you have a web site?

**Rob Allan:**    It's the same web site all of the audio recordings – oh, you haven't been _____ where we've recorded –

**Michael Breedy:**    I don't have any.

**Rob Allan:**    Well, no, the ones that were recorded in February were recorded – it's done the same way. It's the same web page, same access code.

**Michael Breedy:**    Say it again.

**Rob Allan:**    It's the same web page as the February –

**Michael Breedy:**    Oh, I don't have that information.

**Rob Allan:**    _____ sent an e-mail to everybody instructing them, web page and ask for the identity of the specific recording and it's available for 90 days thereafter.

**Michael Breedy:**    Okay; fair enough.  So I don't think there's any further question about Thelen Reid.

**Rob Allan:**    Sara?  Royanne?

**Sara Minskoff Allan:** No.

**Rob Allan:**    Okay.  Moving on to the next item on the agenda.  We have received a management proposal from a firm called Armstrong Realty Management, Inc., which we received both in electronic and written form.

Unfortunately they misunderstood that our meetings were not in person and they sent me three boxes of Federal Expresses with written proposals in them and I have them here so I'll have to redistribute those by Federal Express over the weekend.

But I did get electronic copies, which we circulated yesterday as soon as we got them.  Michael, I believe you said you did.

**Michael Breedy:**    Well, I received it, but when you say they sent you some printed copies, did they contain the exhibits – the samples?

**Rob Allan:**    The answer is I haven't even looked at them because I walked into my office this morning and there were three boxes of them.  So I can't tell you that.

**Michael Breedy:**    'Cause it does say in the agreement that there was a sample flyer, sample checklist, sample statement and sample management report.

**Rob Allan:**    Hold on; let me go get one.

Yeah, it has a variety of things.  It has sample bank statements, sample Yardi reports, sample management contract, new property checklist; a whole series of things.  There's quite a bit of additional addendum materials.  Obviously it would be useful for everybody to have these.

**Michael Breedy:**    Correct.

*Rob Allan:*          I don't think they in any way pertain in any meaningful fashion to the contents of the electronic version. All of the terms are in that.

*Royanne Minskoff:*   Rob, since they use Yardi the reports are identical to the ones that we currently receive?

*Rob Allan:*          No, I think – let me look at them, but I think I recall that they were a little bit more expansive. Let me see.

                     They've got the cash flows; they've got an income register, expense register, transaction register. They've got bank reconciliation, aged receivables, copies of bank statements.

                     What I don't see in here is an arrearages report or some of the other things that I know you already generate.

*Royanne Minskoff:*   But we also saw in the presentation is that anything that Yardi produces we can request and have them really customize the reporting to exactly what we want.

*Rob Allan:*          I believe, Royanne, did you learn whether or not they had the full Yardi system as opposed to just parts of it?

*Royanne Minskoff:*   Yeah.

*Rob Allan:*          Alright; so they can customize it. Alright; that's great.

*Michael Breedy:*     So there was a presentation given by this firm?

*Rob Allan:*          No, I –

*Royanne Minskoff:*   No, I called them and asked them because you may not *[call interrupted]. [Beginning of audio repeats going up to 3:34 P.M.]*

                     *[Call continues]*

                     -- stalled and set that up in their office. So I'm familiar with the program.

*Michael Breedy:*     Okay. So no one's met with these people?

*Rob Allan:*          I've met with them.

*Royanne Minskoff:*   Oh, we've met with them; yeah.

*Rob Allan:*    I met with them in New York. That's how we got the proposal. I mean it doesn't come over the transom. I solicited it. So that's the rationale.

What I can tell you personally that goes beyond the content of the document that you've received is that Mark Massey who's the principle of the firm, has been an operator in New York real estate for – what is it? Seventeen, 18 years and worked in Massey Knakal with his brother Paul.

I don't know if you know Paul or if you know Massey Knakal, but they have a first rate reputation for small property leasing –

*Michael Breedy:*    I'm aware of them, but I looked at his resume and I have several comments about the document. One of them here pertains to this point, which is that Massey's experience is as a sales broker.

*Rob Allan:*    Well, up until the time he started Armstrong that may be true.

*Michael Breedy:*    But that was only four years ago and they have four employees and they only manage 100,000 square feet of commercial space.

I have a project right now for 60,000 that I have myself.

*Rob Allan:*    No, no. I think you've misread it. In the first place he was doing management duties while he was at Massey Knakal beyond leasing, but he was primarily a leasing broker while he was there.

The properties that he has, apparently they're managing 25 properties with about 500 units that have 100,000 feet of commercial space, but the properties are mixed use and include residential as well.

*Michael Breedy:*    No, but to me that doesn't matter. Residential is not commercial and he's got only 100,000 square feet of commercial. It doesn't seem like a whole lot.

*Rob Allan:*    I don't know. How much are these properties? I don't think 77th is 100,000. I don't think the total of all our properties is 100,000. So, I'm not sure that that's particularly pertinent.

I think the qualifications are does he do a good job, does he have good references, are we satisfied with the facilities that he would bring to the table and what's his reputation.

| | |
|---|---|
| **Michael Breedy:** | Again, I see four people here at the firm. The other guy, Fauntleroy is a sales rep and a financial analyst. He only started in management this year. |
| | On page seven the office manager appears to have experience, but the rent collector joined the firm seven months ago and has experience in the hospitality industry. |
| | My point is, and I have several more to make, but my point is this is one firm. Why aren't there others that have been solicited? |
| **Rob Allan:** | Others were solicited. One of the problems that you run into, Michael, as you can well imagine, is that when you're talking about small properties that have a half a dozen or a dozen store fronts, it's hard to find managers that have experience at that level. |
| | I don't want to say experience at that level. It's hard to find managers willing to undertake smaller portfolios or properties with small retail spaces. |
| | The large management firms are not interested and even if they were interested, I don't think any of us would want to find ourselves lost in some back room at some major management firm. |
| **Michael Breedy:** | Well, I agree with you there. Another point I was going to make was with respect to the brokerage firm that was recommended under this management agreement, Futerman. Futerman is a huge firm and I don't think we would get attention there, but in any case. |
| **Rob Allan:** | We're not discussing leasing at this point – |
| **Michael Breedy:** | What are all those recommendations then at the end of the proposal? |
| **Rob Allan:** | I agree, but let me make an observation about that. In the first place I think one of the advantages here is precisely the fact that Armstrong is not purporting to both provide management and leasing services. |
| | They're purporting only to provide management services and we as owners will have the ability to choose any leasing agent that we choose. |
| | They make recommendations, but we're not bound by those recommendations. That I think is a great advantage. It allows us |

to pick the best people for each of the functions we want to have performed.

Now I don't entirely disagree with you about Futerman. On the other hand, I noticed that Minskoff Grant has recently been using Colliers a lot, which is a pretty big firm. So sometimes big firms can do better for you than small firms but that's a discussion to have separately. It's not really pertinent to the discussion of Armstrong.

**Michael Breedy:** It says here – they refer on page 11 to a New Rochelle property. What is that property?

**Rob Allan:** I'm looking for the reference.

**Michael Breedy:** It says, "Our preliminary plan for the White Plains New Rochelle". It's listed twice under additional resources. This is the Queens property. They're talking about White Plains and New Rochelle. I don't understand that.

**Rob Allan:** Well, I think that's just an artifact of the fact that I asked them to give us proposals on multiple properties. So they've obviously written some narrative that addresses all of them, but this proposal is for this property.

**Michael Breedy:** Yeah, but it doesn't even refer to Queens. But in any case.

**Rob Allan:** It doesn't matter. The point is whether the narrative parenthetically refers to somewhere else really doesn't pertain to what they're offering here.

**Michael Breedy:** Now in their – page 16 the recommendations I wasn't very impressed with. At the end of the paragraph it just says, "We would also". Does anyone have any further language on that?

**Royanne Minskoff:** Yeah; I called Mark Massey this morning and asked him if he knew that that sentence had been truncated. He said that the sentence should read, "We would also implement cost control measures to limit expenses while maintaining or enhancing services to existing tenants."

**Michael Breedy:** I just think that's pretty sloppy.

**Rob Allan:** Well, there's a typo in one of the other properties as well.

**Michael Breedy:** Well, the ground lease it says it expires in 2026, which isn't correct either.

I know it's just a proposal, but how would they lease these vacancies immediately?

**Rob Allan:** Well, first of all they're not the leasing agent so I can't tell you. The second thing is in terms of having accurate documentation for these properties, remember they have no documents on these properties. They are only privy to what we have told them at this point.

So they have no access to any of the ground leases or any other documents that's not in their possession. So if they've made an error, that's probably coming from me.

**Michael Breedy:** So all these services, these outside services on page 17, so are you saying I should just ignore those?

**Royanne Minskoff:** I don't think we should ignore them. I think the point here is that one of the benefits of hiring Armstrong is it gives us the ability to hire our own field work force as well as hiring our own leasing broker outside of the management firm.

**Michael Breedy:** For example, it doesn't make a whole lot of sense to have a maintenance person in Ozone Park for a property in Queens.

**Rob Allan:** I think that that's the kind of thing that we can discuss. You've got to remember right now that we pay for employees for these properties, above and beyond the management services that are provided and the management fees that are charged.

We have the option here to be able to engage an outside firm to provide field personnel or we could perhaps direct Armstrong to hire personnel on our behalf. I think that's a choice. I think it's something we can discuss. I don't think it's a disadvantage. I think if anything it's an advantage.

We finally will have the opportunity to fine tune how these properties operate and what the team is that's operating it.

I'm particularly excited at the idea that they don't purport to offer leasing services because that allows us to go pick the best leasing agent and if we find that they're not performing a satisfactory service we can dispose of them and get someone else. We don't even have that option now.

| | |
|---|---|
| *Michael Breedy:* | Why not? |
| *Rob Allan:* | Well because the leasing is done by the same company that does the management. |
| *Michael Breedy:* | Well, we've got a management agreement. We don't have a leasing agreement. |
| *Rob Allan:* | It's part and parcel of the same company. Actually I've been disturbed to notice that the current management company's leasing division has been sub – what's the word I want to use? |
| *Female:* | Subcontract? |
| *Rob Allan:* | Subcontracting our leasing services to an outside firm that none of us have had an opportunity to talk to. In any case, this isn't a commentary about Minskoff Grant or its services. This is a proposal received from Armstrong that I think gives us greater flexibility and a greater opportunity to fine tune how we run these properties at a cheaper cost. |
| *Michael Breedy:* | I guess I have two final points. The first being I think it would be a good idea to get more than one company, one proposal. I've only had – well I've had less than 24 hours. I got the document about six, seven o'clock yesterday to even look at it. |
| | Secondly, I don't know when you're proposing making a decision to replace current management, but as you're aware, the current management agreement which was approved by a majority of the partners was executed in April, 2000, requires notice by July 3ʳᵈ for termination October 1ˢᵗ on an annual basis. |
| *Rob Allan:* | I wouldn't know that because I don't have a copy of the management agreement and have never been given one. So I couldn't tell you what the current management agreement says and Royanne – |
| *Royanne Minskoff:* | I don't have one. |
| *Rob Allan:* | -- I don't believe you have a copy of it either, do you? |
| *Royanne Minskoff:* | I don't have one either. |
| *Rob Allan:* | So we're operating on the basis of a partnership that doesn't even know what its own agreement is. |

*Michael Breedy:*  Well, I'm certainly – I've got a copy of it – I think I might have it online even, but I can certainly fax it over to you, but it was executed by Marjorie Green, U.S. Trust and Jean on April 1st, 2000.

Its termination at this point is annually; notice has to be given by – and I counted some dates here, but July 3rd for termination October 1st of each year.

*Rob Allan:*  Do you have any idea of whether that signature constitutes a majority?

*Michael Breedy:*  Yes –

*Rob Allan:*  'Cause I know that on some of the partnership agreements –

*Michael Breedy:*  On 77th Queens yes it does. It was done before some estate planning was completed on behalf of Marjorie's family. But, yes, it does. It also applies to successors.

*Royanne:*  So you're saying – well, let me just reflect that the time is 1:51. I would still like to see us come to some conclusion of a decision about Armstrong and related decisions. Then we would look to legal to deal with any issues in terms of the existing agreement.

*Michael Breedy:*  Well, I understand your point, but I don't think it would be wise to make a decision that, for example, to agree to sign on a management company when we have one in place. We may not be able to terminate until next – until October 1st of 2008.

*Rob Allan:*  Well, Michael –

*Michael Breedy:*  So, I think we should table this. I'm happy to distribute the document. We can revisit it at a subsequent meeting –

*Rob Allan:*  -- _____ motion to table –

*Michael Breedy:*  I think that's – no. It's a suggestion at this point.

*Rob Allan:*  I hear ya'.

*Michael Breedy:*  But I think that's the most prudent thing to do here.

**Rob Allan:**    Well, alright. So I'm going to call for a vote. Who wants to table this? Michael, I'm going to assume you're voting in the affirmative even though you're not saying anything.

**Michael Breedy:**    I would like to table this and I would strongly suggest that it does get tabled because you don't want to enter into an agreement. Obviously saying you're going to hire someone and signing them up are two different things. But I would not counsel to entering into an agreement with one company when we already have a management company. It's not a prudent thing to do.

**Rob Allan:**    Well, I don't think that's what the motion necessarily would actually say. So, let me –

**Michael Breedy:**    If you'd like to express the motion that's fine.

**Rob Allan:**    Have to make a motion in the alternative. What I'd like to move is that we would hire Armstrong Realty Management effective January 1st of 2008 and that we would instruct Minskoff Grant to turn over to Armstrong all of the partnership assets, records, monies, keys, all partnership documents in their possession by the end of the year December 31st, 2007.

I'd like to add to that that we instruct Minskoff Grant to cease all leasing activity effective immediately.

**Michael Breedy:**    So you want to have two management companies for ten months.

**Rob Allan:**    No, I'm not saying that and until I know for a fact that that's what the management agreement says, I'm not expressing an opinion as to whether it'll be for ten months or one month.

I don't know what the management agreement says; don't have a copy of it; can't see what provisions it provides for us to terminate management. So until I see that I can't make a comment.

**Michael Breedy:**    And I think legally it would be prudent to take a look at the agreement before you agree to sign on any additional companies.

**Rob Allan:**    We're not signing anything today, Michael.

**Michael Breedy:**    But what you just said that you would hire them effective January 1st of '08.

**Rob Allan:** We're authorizing that action. Obviously a management agreement needs to be circulated to members for approval prior to any signature. So we have some time between here and then.

**Michael Breedy:** Well since there's time, again, I think it would be prudent to look at the document and then revisit this issue. You've got six weeks.

**Rob Allan:** Why six?

**Michael Breedy:** Ya' know, four, five, six weeks. I don't understand why it's so pressing to do right now.

**Rob Allan:** We're trying to – I think –

**Royanne Minskoff:** So there's no notification requirements.

**Rob Allan:** No, if there's no – I don't know what the notification requirements are. I don't know what the termination requirements are. What I know is that the end of the year is coming up.

**Michael Breedy:** Well, I can say to you that the notification is that it has to be – the notification has to be given by July 3rd for termination October 1st on an annual basis.

**Rob Allan:** Well, I'm certain that there's somewhat more language than that with regard to termination. So, let me review it. I think we should all review it –

**Royanne Minskoff:** Is that for cause, Michael, or is that just because –

**Michael Breedy:** There is also a for cause provision, which I don't know verbatim, but I don't think you really want to get into that legal issue –

**Royanne Minskoff:** I didn't say that. I was just asking the question.

**Michael Breedy:** There is a for cause –

**Royanne Minskoff:** Since you're at the advantage that you have the document and the rest of us don't that I don't see any reason why we can't move forward with a decision today until we find something to the contrary and then if that's what we have to live by then there isn't any damage done here either.

**Michael Breedy:** Well, no, there's no damage done until a document gets executed with –

| | |
|---|---|
| *Royanne Minskoff:* | Correct. |
| *Michael Breedy:* | -- any subsequent management company. I would definitely agree to that. |
| *Royanne Minskoff:* | Okay. |
| *Rob Allan:* | My point exactly. All we're doing today is authorizing moving forward with retaining Armstrong as our manager and if we find that there's an obstacle to that process then obviously we'll have another meeting and we'll decide what to do. |
| *Royanne Minskoff:* | What I would suggest, Michael, is while it would be beneficial for all of us to have copies of the existing management agreement, it would be more important at this stage for David Olisoff to have a copy of it so he could advise us. |
| *Michael Breedy:* | Okay. Well, what time is it? Well, I should know that, shouldn't I? It's about four. I have to see if – I'm not sure I have it online. So we'll see how that works. |
| | But I will distribute it to – if everyone could give me an e-mail address they'd like it sent to I can arrange for that. I can figure out Olisoff's. Is it just the typical ones that I send to and who wants to receive it? |
| *Rob Allan:* | Property – |
| *Michael Breedy:* | Just one to you, Rob, and one to you Royanne? Would that be sufficient? |
| *Royanne Minskoff:* | That would be great, Michael – |
| *Rob Allan:* | If you send it to Properties@helical.com Sara and I will both get it. |
| *Michael Breedy:* | So it's what? Properties@ -- |
| *Rob Allan:* | At helical.com. |
| *Michael Breedy:* | I think I have yours wrong, but okay. So Properties@helical.com. |
| *Rob Allan:* | Right. |
| *Michael Breedy:* | Okay. Now I just want to – before you make this decision I just want to point out again that if you look at the for cause, as a former lawyer, you're going to litigate that forever. You might as well |

just wait until next October. That's my opinion. You can do with it what you will.

**Royanne Minskoff:** I wasn't asking the question, Michael, because I was suggesting that that was a course of action. I was just asking if it was in the document.

**Michael Breedy:** Yeah. It's all very clear in the document.

**Royanne Minskoff:** Okay.

**Michael Breedy:** The provision I was referring to is like four lines. It's very succinct. But in any case I'll send the things on to you; if not today I'll do it on Monday or sometime over the weekend.

**Royanne Minskoff:** That's great.

**Michael Breedy:** And I'll send that one and getting ahead of myself any other properties – I mean I only have the two. I have that one and I have the one for $82^{nd}/83^{rd}$.

**Rob Allan:** You have an advantage on us.

**Royanne Minskoff:** Yeah.

**Michael Breedy:** I wish – I do wish – I didn't know you didn't have them. I do wish that it was made public that you didn't have them.

**Rob Allan:** I think I wrote you an e-mail to that effect two or three months ago.

**Michael Breedy:** Oh, I don't remember seeing that, but in any case, there is a document and I'll send it and we're good to go.

Now I don't know if you want to formalize any of this, but I'll be quiet now.

**Rob Allan:** Alright. We have two minutes left in this meeting. So there is a motion on the table. I wanted to find out if anybody would be willing to second that motion. Do you want me to re-read it? What do you want me to do?

**Sara Minskoff Allan:** I'll second it.

**Rob Allan:** Well, actually I'm not an owner. I'm your proxy so you can't second your own motion.

| | |
|---|---|
| *Royanne Minskoff:* | It was my motion. |
| *Rob Allan:* | It was your motion?  I thought I was the one who – |
| *Michael Breedy:* | I _____ _____ _____. |
| *Royanne Minskoff:* | Oh, I'm sorry.  I'll second it. |
| *Rob Allan:* | Alright.  So in any case, we're just beating the formalities to death here. |
| *Royanne Minskoff:* | Alright; seconded. |
| *Rob Allan:* | Well, I think we have a motion and it's seconded.  Why don't we go ahead and vote on this so that at least we have a record of the disposition of it.  So, all in favor of the motion? |
| *Royanne Minskoff:* | Aye. |
| *Rob Allan:* | All against? |
| *Michael Breedy:* | Aye. |
| *Rob Allan:* | Alright.  So that's two to one and I think that's a majority.  So the motion carries.  I will at that point just make the observation that obviously we want to review the current management agreement and see what provisions it has that might affect this.  So the soonest we get that the better.  I hate to do this, but we are up – |
| *Royanne Minskoff:* | I'll move to adjourn – |
| *Rob Allan:* | -- against the next meeting where another partner may call in.  So I think what we should probably do is adjourn this meeting.  So I'll entertain a motion to do that. |
| *Royanne Minskoff:* | Move to adjourn. |
| *Michael Breedy:* | Seconded. |
| *Rob Allan:* | Any objection?  Alright.  Without objection we're adjourning and what I'm going to do is stop recording of this call now and then I will start it again for the next meeting.  Hold on. |

*[End of Audio]*