UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

JEAN MINSKOFF GRANT,

                Plaintiff,

           v.

MYCA, LLC and 2220 EQUITIES
MANAGEMENT LIMITED PARTNERSHIP

                Defendants.

------------------------------------------------------------ x

No. 08 CV 508 (CLB)
**FILED BY ECF**

PLAINTIFF'S MEMORANDUM OF LAW
(1) IN OPPOSITION TO DEFENDANTS' JOINT MOTIONS TO DISMISS; AND
(2) IN SUPPORT OF HER CROSS-MOTIONS FOR:
(i) AN ORDER DECLARING THE PARTNERSHIPS DISSOLVED AND
(ii) AN ORDER DIRECTING AN EVIDENTIARY HEARING BE HELD
WITH RESPECT TO THE APPOINTMENT OF A WINDING-UP PARTNER

WILLKIE FARR & GALLAGHER LLP
Thomas H. Golden (TG-1467)
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

Attorneys for Plaintiff Jean Minskoff Grant

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .............................................................................................iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 2

ARGUMENT .................................................................................................................. 13

   I.   THE DEFENDANTS' MOTION ESTABLISHED THAT THE PARTNERSHIPS
       SHOULD BE DISSOLVED .......................................................................... 12

   II.  MS. MINSKOFF GRANT RESPECTFULLY REQUESTS THAT SHE BE
       APPOINTED "WINDING-UP PARTNER." .............................................. 13

          A.  Upon Dissolution, the Partnerships Continue and Their Affairs Are
             Wound Up ........................................................................................ 14

          B.  The Court Has Broad Discretion to Appoint Certain Partners to Wind Up the
             Affairs ............................................................................................ 15

          C.  Appointment of a "Winding-Up" Partner Would Be Appropriate Here............. 15

          D.  Ms. Minskoff Grant Is Best Situated to Effectuate an Orderly Winding-Up ..... 17

  III.  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND CAUSE OF
       ACTION IGNORES THE COURT'S BROAD POWERS TO SUPERVISE THE
       WINDING UP OF THE PARTNERSHIPS' AFFAIRS................................. 18

CONCLUSION................................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

## CASES

<u>Bayer v. Bayer</u>, 15 A.D. 454, 214 N.Y.S. 322 (1st Dep't 1926) .................................................. 14

<u>Bell Atlantic v. Twombly</u>, 127 S.Ct. 1964 (May 21, 2007) ....................................................... 19

<u>Ben-Dashan v. Plitt</u>, 58 A.D.2d 244, 396 N.Y.S.2d 542 (4th Dep't 1977) ................................ 14

<u>Conradt v. NBC Universal</u>, No. 07-6623, 2008 WL 501361 (S.D.N.Y. Feb. 26, 2008)............ 19

<u>Goergen v. Nebrich</u>, 4 A.D.2d 526, 167 N.Y.S.2d 491 (4th Dep't 1957) ............................. 14,19

<u>Harshman v. Pantaleoni</u>, 294 A.D.2d 687, 741 N.Y.S.2d 348 (3d Dep't 2002)........................ 12

<u>Iqbal v. Hasty</u>, 490 F.3d 143 (2d Cir. 2007).............................................................................. 19

<u>Netburn v. Fischman</u>, 81 Misc.2d 117, 364 N.Y.S.2d 727 (Supreme Court, Bronx County, 1975) ................................................................................................... 15,19

<u>Scholastic, Inc. v. Harris</u>, 259 F.3d 73, (2d Cir. 2001)............................................................. 14

<u>Seligson v. Russo</u>, 6 A.D. 2d 283, N.Y.S.2d 544 (1st Dep't 2005)............................................ 13

<u>Toeg v. Margolies</u>, 280 A.D. 319, 113 N.Y.S.2d 373 (1st Dep't 1952).................................... 14

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2),(3) ......................................................................................................... 19

Fed. R. Cov. P. 56(c)............................................................................................................. 13,20

N.Y. Partnership Law § 61 ........................................................................................................ 14

N.Y. Partnership Law § 68 .................................................................................................. 15,18,19

N.Y. Partnership Law § 75 ...........................................................................................2,14,15,18,19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JEAN MINSKOFF GRANT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | No. 08 CV 508 (CLB) |
| -against- | : | **FILED BY ECF** |
| | : | |
| MYCA, LLC and 2220 EQUITIES MANAGEMENT | : | |
| LIMITED PARTNERSHIP, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

PLAINTIFF'S MEMORANDUM OF LAW
(1) IN OPPOSITION TO DEFENDANTS' JOINT MOTIONS TO DISMISS; AND
(2) IN SUPPORT OF HER CROSS-MOTIONS FOR:
(i) AN ORDER DECLARING THE PARTNERSHIPS DISSOLVED AND
(ii) AN ORDER DIRECTING AN EVIDENTIARY HEARING BE HELD
WITH RESPECT TO THE APPOINTMENT OF A WINDING-UP PARTNER

Plaintiff Jean Minskoff Grant respectfully submit this memorandum of law (1) in

opposition to the motions (the "Motions") filed by Defendants in the Actions to dismiss what

Defendants mischaracterize as Plaintiffs' claims for injunctive relief; and (2) in support of

Plaintiff's cross motions for Orders (a) declaring the dissolution of the partnership that is the

subject of this action; and (b) setting an evidentiary hearing to determine whether Ms. Minskoff

Grant should be appointed as "winding-up" partner.

PRELIMINARY STATEMENT

This Action and two related cases pending before this Court (the "Dissolution

Actions")[1] seek judicial dissolutions and winding up of three Minskoff family partnerships (the

_____

[1]    The two other cases are Scorpio 8283 LLC v. 2220 Equities Management Limited Partnership and MYCA,
LLC, No. 7:08-cv-510 (S.D.N.Y.) (CLB) (the "Court-Martine Action"); MLP I and QCR 77 LLC v.

"Partnerships") having overlapping – but not completely identical – memberships. The name of the Partnership that is the subject of the above-captioned action is "Halstead-Harrison Avenue Ventures." In her Complaints, Ms. Minskoff Grant seeks not only an Order of dissolution of Halstead-Harrison Avenue Ventures but also an Order allowing her to manage the partnership's affairs during the dissolution and winding-up processes. Such relief explicitly is contemplated by the New York Partnership Law.

Defendants' Motions seem to concede that Halstead-Harrison Avenue Ventures should be dissolved. They argue, however, that the Court should dismiss Ms. Minskoff Grant's cause of action seeking an Order authorizing her to manage the partnerships' affairs because she purportedly has not and cannot meet the (inapplicable) test governing applications for preliminary injunctions. In advancing that argument, Defendants misstate the nature of the relief sought. The request in question is not governed by Rule 65, which concerns preliminary injunctions, but rather by the New York Partnership Law's provision that "[i]n an action brought to dissolve a partnership . . . the court may, in its discretion, by order, authorize the partnership business to be continued, during the pendency of the action by one or more partners. . . ." NY Partnership Law § 75.. We are aware of no authority, and Defendants have cited none, suggesting that the Court's analysis in that regard should be governed by the Rule 65 standard for injunctive relief.

Indeed, Ms. Minskoff Grant has moved for an Order under New York Partnership Law Section 75 authorizing her to continue managing the Partnership's business during the

---

MYCA, LLC and 2220 Equities Management Limited Partnership, No. 7:08-cv-511 (S.D.N.Y.) (CLB) (the "77th Queens Action").

pendency of this Action.  Plaintiff respectfully request that the Court hold an evidentiary hearing with respect to that application.

STATEMENT OF FACTS

*The Minskoff Family Partnerships*

Beginning in the 1950's, Henry Minskoff, Jerome Minskoff, and Myron Minskoff (collectively, the "Minskoff Brothers") formed a number of partnerships for the purpose of acquiring, owning, and leasing real estate in and around New York City.  Among the partnerships that the Minskoff Brothers formed were the three Partnerships.

In particular, 77th Queens Associates was formed pursuant to a general partnership agreement dated November 2, 1970, and amended December 24, 1970, for the purpose of acquiring a leasehold interest on the land and building at 116-02 to 116-32 Queens Boulevard in Queens, and operating and managing that property.  See Complaint filed in 77th Queens Action ¶ 11.  Court Martine Associates was formed pursuant to a general partnership agreement dated June 15, 1977, for the purpose of acquiring and holding the title to the property known as 169 to 183 Martine Avenue and 39 to 55 Court Street, in White Plains, New York. See Complaint filed in Court-Martine Action ¶ 10.  Finally, the Minskoff Brothers formed Halstead Harrison Avenue Ventures in or around 1975 for the purpose of acquiring property located at 270 to 278 Halstead Avenue in Harrison, New York.  See Complaint filed in Halstead Action ¶ 8.  (As indicated above, the properties currently owned by the three Partnerships are referred to collectively as the "Properties.")

After the deaths of the Minskoff Brothers, their interests eventually were assigned to various Minskoff family members and trusts.  The current partners in the Partnerships are as follows:

- <u>Halstead Harrison Avenue Ventures</u>:  Jean Minskoff Grant, MYCA, LLC, and 2220 Equities Management Limited Partnership.

- <u>77th Queens Associates</u>:  MLP 1 (comprised of Jean Minskoff Grant as general partner and her brother James Sterling as limited partner); QCR 77 LLC (whose sole member is the Maggie P. Minskoff QTIP Trust, of which Patricia Minskoff Breede is the sole trustee); MYCA, LLC (whose members are Sara Minskoff Allan and her mother Carolyn Minskoff); and 2220 Equities Management Limited Partnership (whose partners are Alan Minskoff and his wife Royanne Minskoff).

- <u>Court-Martine Associates</u>  Scorpio 8283 LLC (whose sole member is the Maggie P. Minskoff QTIP Trust); MYCA, LLC; and 2220 Equities Management Limited Partnership.

See <u>id</u>.

### <u>Minskoff Grant Realty & Management Corp.</u>

Jean Minskoff Grant, who owns partnership interests in two of the three Partnerships, is the President and Chief Operating Officer of Minskoff Grant Realty & Management Corp. ("MGRMC"); her husband, Francis C. Grant III, is MGRMC's Chief Executive Officer.  <u>See</u> Affidavit of Jean Minskoff Grant, sworn to March 26, 2008 ("Grant Aff."), ¶ 5.  Mr. and Ms. Grant (collectively, the "Minskoff Grants") formed MGRMC twenty-four years ago as a successor company to property management companies that have been run by members of the Minskoff family for the past 100 years.  <u>See</u> <u>id</u>. ¶ 6.

MGRMC provides direct and asset management for a diversified portfolio of urban and suburban office buildings and retail properties.  <u>See</u> <u>id</u>. ¶ 7.  Currently, MGRMC directly manages a portfolio of sixteen properties in Westchester, Manhattan, and Queens.  <u>See</u> <u>id</u>.  In 2007, MGRMC leased 86,077 square feet, including 13 new leases, and more than half of the properties managed by MGRMC were fully leased.  <u>See</u> <u>id</u>.

### <u>MGRMC's Successful Management Of The Properties</u>

Since at least January 2002, the Minskoff Grants have managed the Properties through MGRMC, pursuant to contracts between MGRMC and the Partnerships.  See id. ¶¶ 8-9.  The Minskoff Grants manage the Properties in a manner that reflects their comprehension that, if the Properties do well, the Partnerships are benefited and the Minskoff Grants, in turn, are benefited through their personal ownership interests in the Properties.  See id. ¶ 10.  Indeed, although Ms. Minskoff Grant is the COO of MGRMC, she receives the lowest salary at the company because she runs MGRMC to benefit the Properties and not herself personally, understanding that she will do well if the Properties do well.  See id.

MGRMC maintains offices in close proximity to all Properties (MGRMC offices are located in Manhattan, White Plains, and Rego Park) and has nine employees who assist in the management of the Properties.  See id. ¶ 14.  Each Property is visited every day by one or more MGRMC employees.  See id.  In addition, each Property is visited at least twice a week by MGRMC's Property Manager, who uses his 17 years of experience to oversee preventative maintenance and construction that assure that the Properties are maintained in excellent repair for the least possible cost.  See id.

For each Property, MGRMC has created a binder that contains information regarding vendors, certificates of insurance, work contracts, emergency contacts, and more.  See id. ¶ 15.  The binder is provided to the superintendent of the Property and is updated as needed to ease operations, track vendors' responsibilities, maintain historical records for the buildings, and keep track of communications between the main office and the site, which is a very time-consuming but valuable function.  See id.  Additionally, MGRMC has compiled a tenant book for each Property that houses office tenants.  See id.  The tenant books contain a detailed summary of building rules and regulations, important contact information, fire safety guidelines,

and more. See id. MGRMC devotes a great deal of time to identifying and correcting tenants'

violations of building rules and regulations. See id. ¶ 16. MGRMC assists tenants in curing

violations and, when necessary, participates in depositions and legal actions. See id.

       MGRMC's management of the Properties has been highly prudent and cost-

effective. For example, when MGRMC took over the management of the Properties, it worked

to eliminate "inter-property loans" that were necessitated by the poor practices of the prior

managers. MGRMC also has decreased arrears, increased security deposits, and decreased

vacancies at the Properties. See id. ¶ 11. Furthermore, MGRMC, which is bonded, also has

developed an excellent relationship with Sterling Bancorp, with which it maintains separate bank

accounts for each and every Property. See id. ¶ 12. Because of the strong relationship between

MGRMC and Sterling Bancorp, Sterling Bancorp does not penalize the Properties for early or

partial withdrawals from CDs or for low balances on accounts. See id. If such penalties ever are

posted, they always are credited back to the Property. See id.

       MGRMC has attracted as tenants national retail establishments such as CVS and

Starbucks, and banks such as Washington Mutual. See id. ¶ 18. MGRMC also has improved the

leases used by the Partnerships. Prior to MGRMC's management, for example, tenants were not

assessed any charges for necessary maintenance of common areas. See id. ¶ 19. MGRMC

implemented common area maintenance charges that significantly have reduced unnecessary

costs to the Partnerships. See id. Clauses relating to common area maintenance must be

negotiated individually with respect to each lease, require complex calculations, and necessitate a

labor-intensive billing and collections process. See id. In 2007, MGRMC collected on behalf of

its total portfolio of properties over $1 million in common area maintenance charges and over

$1.6 million in real estate tax escalations. See id. ¶ 20.

MGRMC also has been able to leverage its banking relationships to obtain favorable mortgages and interest rates for the Partnerships.  See id. ¶ 13.  For its total portfolio of properties, MGRMC successfully has negotiated more than a dozen initial financings and/or re-financings for the benefit of the property owners.  See id.  That reflects over $58 million in mortgages.  See id.

In addition, Ms. Grants regularly have apprised all the partners in the various Partnerships -- including the Revoking Partners – of material activities in their management of the Properties.  For example, MGRMC has developed a detailed interactive process with partners of each Partnership regarding proposed leases, which includes an analysis of each proposed tenant's viability along with proposed lease terms.  See id. ¶ 17.  For every proposed tenant at the Properties, MGRMC has presented an analysis to the applicable partners for approval before proceeding with lease negotiations to ensure that legal fees are not wasted in negotiating leases that said partners ultimately would not approve.  See id.  MGRMC also has provided to all partners of each Partnership detailed monthly and quarterly property and management reports on each Property.  See id. ¶ 21.  Those reports provide general information regarding the status of each Property as well as information regarding bank account balances, payments and receivables, and the monthly rent roll.  See id.  In addition to those monthly and quarterly reports, MGRMC also periodically issues "executive summaries" that highlight each Property's most recent successes and challenges.  See id.  MGRMC also promptly communicates with the partners of each Partnership whenever a material issue arises with respect to any Property.  See id.

Additionally, MGRMC has developed and implemented a budgeting process pursuant to which draft budgets for each Property regularly are circulated along with master budget note descriptions.   See id. ¶ 22.  The partners of each relevant Partnership are asked for

their input regarding the draft budgets and MGRMC coordinates conference calls to discuss all relevant issues with respect thereto. See id. As to tax-related filings, including Financial Statements and K-1s, MGRMC's Controller and Assistant Controller, who have a collective nine years of experience working with MGRMC and its tenants, work closely with the outside tax consultants who prepare the documents for filing. See id.

Over the years, there has been a steady deterioration in the relationships among certain Minskoff family members such that the partners (and their spouses) in the three Partnerships have divided into camps, with one camp comprised of the Minskoff Grants and Patricia Minskoff Breede and Michael Edward Breede, and the other comprised of Sara and Robb Allan, and Alan and Royanne Minskoff. As a result, there has been broad recognition among those individuals, as well as others, that the Partnerships could not constructively continue as presently constituted. Consequently, efforts have been made periodically to negotiate a framework whereby the Partnerships would be dissolved and their assets reallocated among the partners. Such efforts were revived in late 2007, but did not progress. See Grant Aff. ¶ 3; see also Affidavit of Michael Edward Breede, sworn to March 26, 2008 ("Breede Aff."), ¶ 6.

*Certain Partners' Efforts To Remove MGRMC As Manager Of The Properties*

Also in late 2007, the Revoking Partners embarked on an effort to remove MGRMC. In doing so, however, the Revoking Partners were less than forthcoming to their fellow partners. At a November 30, 2007 partnership meeting of one of the Partnerships, Robb Allan (as a representative of MYCA, LLC) raised the issue of replacing MGRMC with Armstrong Realty Management, Corp. ("Armstrong"). See Breede Aff., ¶ 7 and Ex. A. Mr. Breede (as a representative of QCR 77 LLC, Scorpio 8283 LLC, and Pisces 8283 LLC) repeatedly voiced serious concerns regarding that course of action, both with respect to the

ramifications of terminating contracts with MGRMC and with respect to the qualifications of Armstrong.  Mr. Allan assured Mr. Breede that "obviously a management agreement [with Armstrong] needs to be circulated to members for approval prior to any signature.  So we have some time between here and then."  Id., Ex. A.  Mr. Allan also claimed that "all we're doing today is authorizing moving forward with retaining Armstrong as our manager."  Id.  Despite those assurances, however, neither Mr. Breede nor Ms. Grant was provided with a copy of any proposed agreement with Armstrong and there was no further discussion at the partnership level about the matter.  See Grant Aff. ¶ 26; Breede Aff. ¶ 8.  Indeed, Mr. Breede and Ms. Grant were excluded completely from the purported hiring process and were not provided with fully executed copies of the Armstrong agreements until January 30, 2008.

In response to a request from Michael Edward Breede, MGRMC immediately sent to Sara Minskoff Allan and Royanne Minskoff copies of the management agreements with MGRMC.  See Grant Aff. ¶ 25.  Nonetheless, by letters dated December 11, 2007, and without regard to the notice and termination provisions in the management agreements, Sara Minskoff Allan and Royanne Minskoff, purportedly on behalf of the Partnerships, stated to Ms. Grant that each Partnership had "elected to retain the services of a successor management firm (Armstrong Realty Management, Corp.) and leasing firm, effective January 1, 2008."  See Grant Aff. ¶ 26 Ex. B.  Moreover, Ms. Allan and Ms. Minskoff falsely claimed that "despite repeated requests, . . . [MGRMC] has failed to provide [the management] agreement to the partners."  In fact, as mentioned above, MGRMC had sent the management agreements several days before the date of Ms. Allan's and Ms. Minskoff's letters.  Id. ¶ 25.

Ms. Allan and Ms. Minskoff also unreasonably demanded that Ms. Grant surrender her management files for the Properties by the end of December   a mere three short

holiday weeks to assemble and distribute extensive files for four properties dating back several years – even though the management agreements contemplated ninety days notice of non-renewal, and even though the contract with Armstrong was not finalized until January 13, 2008. Consequently, MGRMC's counsel wrote to Sara Minskoff Allan and Royanne Minskoff, and alerted them to the management agreements' automatic renewal and termination provisions.  See Golden Aff., Ex. A.  In response, Ms. Allan and Ms. Minskoff caused the Partnerships to retain new counsel, who asserted, despite the fact that the management agreements each had been executed by a majority of the relevant partners, see Grant Aff. ¶ 25, that that the automatic renewal provisions were unenforceable and would therefore be disregarded.  See Golden Aff. ¶ 3.

*Plaintiffs File Actions Seeking Dissolution And Appointment As Winding-Up Partners*

On January 18, 2008, Ms. Grant (as an individual partner and on behalf of MLP I) and Patricia Minskoff Breede (on behalf of QCR 77 LLC and Scorpio 8283 LLC) (together, the "Dissolving Partners"), having concluded that their relations with Sara and Robb Allan and Alan and Royanne Minskoff had deteriorated to the point where the Partnerships could no longer effectively function, commenced the Dissolution Actions.

Broadly speaking, the Complaints in the Dissolution Actions seek two items of relief.  First, they seek an Order dissolving the Partnerships.  Second, to protect against mismanagement of the Properties, waste of Partnership resources, and erosion of landlord-tenant relations, the Complaints seek an Order authorizing the Plaintiffs, or their agents, to continue to manage the Properties during the dissolution of the Partnerships and the winding up of the Partnerships' affairs.

On the same day that Plaintiffs filed the Dissolution Actions, the Dissolving Partners' counsel provided copies of the summonses and complaints to counsel that the Revoking Partners had hired for the Partnerships.  See Golden Aff. ¶ 5.  The Dissolving Partners' counsel also sent those documents to counsel representing the Revoking Partners in their individual capacities.  See id.

*Despite The Relief Requested In The Complaints,*
*Defendants File Separate Litigation To Remove MGRMC*

After the Dissolving Partners filed the Dissolution Actions, the Revoking Partners continued their efforts to remove MGRMC and install Armstrong.  In response, the Dissolving Partners' counsel wrote to the Revoking Partners' counsel advising that the Revoking Partners had misrepresented their intentions regarding Armstrong; reiterating a previous request for information concerning the supposed contract with Armstrong; and indicating that, given the complete absence of any information regarding Armstrong, the Dissolving Partners were instructing Armstrong to refrain from taking any action on behalf of the Partnerships.  See Golden Aff., Ex. F.

Two days later, the Revoking Partners filed an action (the "Termination Action") in the New York State Supreme Court, New York County and moved, by order to show cause, for a preliminary injunction removing MGRMC as managers of the Properties.  By order dated March 18, 2008, the Supreme Court granted that motion.  MGRMC has filed a notice of appeal, and the Supreme Court, Appellate Division has granted an interim stay of the lower court's order.  See Golden Aff. ¶ 6.

After filing the Termination Action, the Revoking Partners finally provided the Dissolving Partners with copies of the Armstrong contract.  It reveals that Armstrong is charging essentially the same fees as MGRMC, despite not having MGRMC's capabilities or expertise

with respect to the Properties.  Furthermore, although Armstrong purportedly has assumed management responsibilities for certain Properties for the past three months, Armstrong has not, to Plaintiffs' knowledge, provided any information to the Partnerships regarding the status of the Properties or the actions that it has taken with respect thereto.  See Grant Aff. ¶ 28.  More specifically, and for example, Armstrong has not provided any leasing or property updates, accounting for any funds it has received or the location of such funds, or management recommendations.  See id.

*Defendants' Motion and Plaintiffs' Cross-Motion*

Defendants moved to dismiss Ms. Minskoff Grant's second cause of action, in which she requested an Order authorizing her, or their agents, to manage the Partnership's properties while their affairs are wound up.

Ms. Minskoff Grant has cross-moved for certain relief.  First in light of Defendants' recognition that "the partners have been in a state of sharp discord over the management and day-to-day operations" of the Partnership properties, Ms. Minskoff Grant moves for summary judgment on her request for an Order dissolving Halstead-Harrison Avenue Ventures.  Second, Ms. Minskoff Grant moves for an order appointing her "winding-up" partner to manage the Partnership's affairs, and the winding-up process generally, pursuant to the New York Partnership Law.

I.

DEFENDANTS' MOTION ESTABLISHES<br>THAT THE PARTNERSHIP SHOULD BE DISSOLVED.

Halstead-Harrison Avenue Ventures is a partnership at will and therefore can be dissolved upon the act of any partner.  See Harshman v. Pantaleoni, 294 A.D. 2d 687, 741 N.Y.S.2d 348 (3d Dep't 2002).  In addition, the New York Partnership Law authorizes the

judicial dissolution of a partnership where "circumstances render a dissolution equitable."  New York Partnership Law § 63(1)(f).  Such circumstances include a deadlock among partners.  See Seligson v. Russo, 16 A.D. 2d 283, 227 N.Y.S.2d 544 (1st Dep't 2005); Harshman, 294 A.D. 2d at 687, 741 N.Y.S. 2d at 348.

Nothing in Defendants' papers in support of their Motion suggests that dissolution would not be appropriate here.  To the contrary, Defendants themselves assert that "the partners have been in a state of sharp discord over the management and day-to-day operations" of the Partnerships' principal assets.  See Defendants' Rule 56.1 Statement, at ¶ 20.

The Federal Rules of Civil Procedure allows a party to move, with or without supporting affidavits, for summary judgment on all or part of a claim.  Fed .R. Civ. P. 56(a) Such a motion may be filed anytime after 20 days have passed from commencement of the action or an opposing party serves a motion for summary judgment.  Id.  The motion should be granted if "the pleadings, the discovery and disclosure materials on file and any affidavits show that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(c).  Given Defendants' admission in their Rule 56.1 statement that "the partners have been in a state of sharp discord over the management and day-to-day operations," Plaintiffs respectfully request that the Court issue an Order declaring Halstead-Harrison Avenue Ventures to be dissolved.

## II.

### MS. MINSKOFF GRANT RESPECTFULLY REQUESTS THAT SHE BE APPOINTED "WINDING-UP PARTNER."

For the reasons discussed next, Ms. Minskoff Grant respectfully submits that the Court should authorize her, pursuant to the New York Partnership Law, to manage the winding up of the Halstead-Harrison Avenue Ventures and the day-to-day affairs of the property its owns

during that process.  Ms. Minskoff Grant also respectfully requests that the Court hold an

evidentiary hearing on her application, so that it can hear from the various partners directly and

assess which of them would be best suited for this role.

   A.  Upon Dissolution, the Partnerships Continue As Their Affairs Are Wound Up.

      The Partnerships will not be terminated upon their dissolution.  See N.Y.

Partnership Law § 61; Scholastic, Inc. v. Harris, 259 F.3d 73, 85 (2d Cir. 2001) ("Dissolution is

not termination; instead the partnership 'continues' until the winding-up of its affairs is

completed.") (citation omitted).  Rather, an accounting must be prepared, the Partnerships'

affairs must be wound up, and any remaining assets must be distributed to the partners.  See Ben-

Dashan v. Plitt, 58 A.D.2d 244, 249, 396 N.Y.S.2d 542, 546 (4th Dep't 1977) ("the only manner

in which a partnership can be wound up is through an accounting") (citing Toeg v. Margolies,

280 A.D. 319, 321, 113 N.Y.S.2d 373, 374 (1st Dep't 1952)); Goergen v. Nebrich, 4 A.D.2d

526, 528, 167 N.Y.S.2d 491, 492 (4th Dep't 1957) (after the judgment of dissolution . . . "[i]t

remained, therefore, the function of the court to direct the accounting and to supervise the

winding up of the partnership pursuant to section 75 of the Partnership Law").

      Accordingly, the partners will be required not only to "devis[e] a method to

distribute [partnership] assets," but also to wind-up its "existing business affairs."  Scholastic,

259 F.3d at 85 (citing Bayer v. Bayer, 215 A.D. 454, 472-73, 214 N.Y.S. 322 (1st Dep't 1926)).

As discussed next, Ms. Minskoff Grant respectfully submits that, in light of the total breakdown

in the relations between Plaintiffs and Defendants, the winding-up process quickly will turn

chaotic unless the Court appoints one or more partners to manage that process, subject to Court

oversight.  Ms. Minskoff Grant therefore respectfully requests that she be appointed winding up

partner, and respectfully suggests that the Court hold an evidentiary hearing at which she and any

other partners who seek that designation may present to the Court facts supporting such an appointment.

B. The Court Has Broad Discretion to Appoint Certain Partners to Wind Up the Affairs.

The New York Partnership Law grants the Court broad discretion to oversee the dissolution process, including the authority to designate one or more partners to manage the partnership's affairs during that process. Thus, Section 68 of the Partnership Law provides that:

> the partners who have not wrongfully dissolved
> the partnership . . . [have] the right to wind up the
> partnership affairs; provided, however, that any
> partner, . . . upon cause shown, may obtain
> winding up by the court.

N.Y. Partnership Law § 68. In addition, Section 75 of the Partnership Law provides that:

> In an action brought to dissolve a partnership, . . .
> the court may, in its discretion, by order,
> authorize the partnership business to be
> continued, during the pendency of the action by
> one or more partners, upon their executing and
> filing with the clerk an undertaking. . . .

N.Y. Partnership Law § 75.

New York courts have confirmed that the court before which a dissolution action is pending has broad discretion to oversee the winding-up process, including by appointing certain partners to manage the partnership's affairs during that process. See Netburn v. Fischman, 81 Misc.2d 117, 364 N.Y.S.2d 727 (Supreme Court Bronx County 1975); Georgen, 4 A.D.2d at 526, 167 N.Y.S.2d at 491.

C. Appointment of a "Winding-Up" Partner Would Be Appropriate Here.

Ms. Minskoff Grant respectfully submits that, in light of the sharp discord among the Partners, including their inability to agree on basic matters regarding the day-to-day management of the Partnerships' properties, the appointment of a "winding-up partner" would be

appropriate.  Ms. Minskoff Grant also respectfully submit that such partner should be responsible

for the day-to-day management of Halstead Harrison Ventures and its properties; provide

frequent, regular reports for all other Partners and the Court regarding such management; prepare

an accounting of partnership matters; and devise and propose to the Court a comprehensive plan

for the orderly, fair and efficient distribution of partnership assets.

   Ms. Minskoff Grant believes that, in the absence of such an appointment, the

winding-up process will become bogged down in endless bickering and motion practice by the

various parties.  Indeed, that concern is largely borne out by the Defendants' efforts to replace

MGRMC with Armstrong.  As discussed above, Defendants breached their fiduciary duties of

candor to their fellow partners by falsely assuring them that no contract would be entered into

with Armstrong until all partners had an opportunity to weigh in on any proposed agreement.

Despite those assurances, Defendants executed an agreement with Armstrong, and did not

provide it to their fellow partners until after the fact.  Then, when objecting parties exercised

their rights as general partners to instruct Armstrong to cease and desist from taking actions on

behalf of the Partnerships,[2] and despite their having knowledge of these Actions, the Defendants

commenced a separate action in New York State Supreme Court seeking an order removing

MGRMC as manager  of the Partnership's properties, without even informing that court of the

pendency of these Actions.  Ms. Minskoff Grant respectfully submits that, in the absence of

direction from this Court regarding which Partners shall have responsibility for the management

---

[2]  See Northmon Investment Co. v. Milford Plaza Associates, 284 A.D.2d 250, 251, 727 N.Y.S.2d 419, 420 (1st Dep't 2001), (partners can "prevent contemplated transactions with third parties," and enjoy a right to interfere with executed or prospective contracts with the partnership that is "absolute" and "privileged, excusable and justified.").

of partnership's affairs during the winding up process, chaos will continue to the detriment of all the parties.

### D. Ms. Minskoff Grant Is Best Situated to Effectuate an Orderly Winding-Up.

Ms. Minskoff Grant respectfully submits that she would be in the best position among the partners to manage the winding-up process.

As set forth in the Minskoff Grant Affidavit, Ms. Minskoff Grant is intimately familiar with the Partnerships' affairs and their Properties. Through MGRMC, she has managed those Properties for several years with stellar results, and has achieved economies of scale for the Partnerships in light of their management of multiple Minskoff family properties. MGRMC employs a large staff that is physically situated near the Properties and visit them daily. It also has maintained excellent relationships with the Properties' tenants. During its tenure as manager, MGRMC has kept all partners apprised of the status of the various Properties, including through the submission of regular, detailed reports. Indeed, Ms. Minskoff Grant's dual role as a partner in various of those partnerships, and as a co-owner of MGRMC, ensures that the properties receive special care and attention that outside managers could not be expected to provide. Furthermore, MGRMC's management of other Minskoff family properties – which will continue regardless of the outcome here – will provide economies of scale that will allow MGRMC to manage the Properties more efficiently than would any other management firm.

In short, Ms. Minskoff Grant believes that the winding-up process should include the continuation of MGRMC's services as property manager. She also believes that an accounting and preparation of a plan for distributing Partnership assets would be best accomplished by leveraging Ms. Minskoff Grant's detailed knowledge of Partnership affairs. Finally, allowing Ms. Minskoff Grant to continue to manage the Properties during the

presumably short period that will be needed to wind up partnership affairs will preserve the resources of Halstead Harrison Ventures by avoiding the extra expenses associated with a transfer of management.  Consequently, Ms. Minskoff Grant respectfully requests that she be appointed winding-up partner.

Ms. Minskoff Grant recognizes the importance of the selection and appointment of a particular partner to manage the winding-up process.  She therefore respectfully submits that the Court would be aided in its evaluation of her application – as well as any competing applications by any other partners who seek such appointment – if it were to hear live testimony from any parties who wish to be heard on this matter.  Such testimony may allow the Court better to assess the relevant partners' competence, familiarity with Halstead Harrison Ventures and it properties, and fitness to serve as the manager of partnership affairs during the winding-up process.  Consequently, Ms. Minskoff Grant respectfully request that the Court schedule an evidentiary hearing to determine which partners, if any , should be designated to mange the Partnerships' affairs pursuant to Sections 68 and 75 of the New York Partnership Law.

III.

### DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND CAUSE OF ACTION IGNORES THE COURT'S BROAD POWERS TO SUPERVISE THE WINDING UP OF THE PARTNERSHIPS' AFFAIRS.

Ms. Minskoff Grant's request for the relief described in Point II above was set forth in Count Two of her Complaint.  Defendants argue in their Motion that Count Two should be dismissed under Rule 12(b)(6) or, in the alterative, under Rule 56 because Ms. Minskoff Grant purportedly has not and cannot met the standard for *injunctive* relief.  But that is not the applicable test here.

4184771.8

Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and expressly countenances demands for "relief in the alternative or of different types of relief." Fed. R. Civ. P. 8(a)(2), (3); see also Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007). A pleading is not required to set forth "detailed factual allegations," and need not set forth all the facts the plaintiff intends to prove. Rather, the inquiry is whether the claim for entitlement to relief is "plausible." Bell Atlantic v. Twombly, 127 S.Ct. 1964 (May 21, 2007). On a Rule 12(b)(6) motion, of course, the Court must accept as true the factual allegations of the non-moving parties and must draw all reasonable inferences in their favor. Conradt v. NBC Universal, No. 07-6623, 2008 WL 501361 (S.D.N.Y. Feb. 26, 2008). The relief sought in Count Two expressly is provided by the New York Partnership Law, and Plaintiffs need not satisfy the standard for a preliminary injunction to obtain such relief.

As discussed above, the New York Partnership Law grants the Court broad discretion to oversee the dissolution process, including the authority to designate one or more partners to manage the partnership's affairs during that process. See N.Y. Partnership Law §§ 68, 75; Netburn v. Fischman, 81 Misc.2d 117, 364 N.Y.S.2d 727 (Supreme Court, Bronx County, 1975); Georgen v. Nebrich, 4 A.D.2d 526, 167 N.Y.S.2d 491 (4th Dep't 1957). In light of that broad discretion, Defendants have failed to demonstrate that Ms. Minskoff Grant's entitlement to relief under the New York Partnership Law is not "plausible." Bell Atlantic v. Twombly, 127 S.Ct. 1964 (May 21, 2007). Consequently, Defendants' motion to dismiss under Rule 12(b)(6) should be denied.

A Rule 56 analysis does not lead to a different outcome. Under Rule 56, summary judgment should be granted only if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Again, Defendants' argument is based on the assumption that Ms. Minskoff Grant would be entitled to the requested relief only if she can meet the test for injunctive relief under Rule 65. Defendants point to no authority, however, holding that the Court's broad discretion under the New York Partnership Law is so limited. Furthermore, as set forth in the accompanying Grant Affidavit, Mrs. Minskoff Grant has an ample basis to request that she be authorized to manage partnership affairs during the winding up process. Consequently, Defendants' request in the alternative for dismissal under Rule 56 should be denied.

<u>CONCLUSION</u>

For all the foregoing reasons, Ms. Minskoff Grant respectfully requests that the Court (a) declare Halstead Harrison Ventures to be dissolved; (b) appoint Ms. Minskoff Grant "winding up partner" to manage Halstead Harrison's affairs during the winding up process; and (c) deny Defendants' partial motion to dismiss or, in the alternative, for summary judgment.

DATED:   New York, New York
         March 26, 2008


                          Respectfully submitted,

                          WILLKIE FARR & GALLAGHER LLP


                          By _____
                             Thomas H. Golden (TG-1467)
                             (A Member of the Firm)


                          787 Seventh Avenue
                          New York, New York 10019-6099
                          tgolden@willkie.com
                          (212) 728-8000

                          Attorneys for Plaintiff

4184771.8                          - 21 -

## CERTIFICATE OF SERVICE

The undersigned, a member in good standing of the bar of this Court, certifies that on

March 26, 2008, he caused a copy of the foregoing document to be served via e-mail, pursuant to

an agreement, upon the following:

Philip H. Gitlen
Whiteman Osterman & Hanna LLP
Once Commerce Plaza
Albany, New York  12260
pgitlen@woh.com


Christopher E. Buckley
Whiteman Osterman & Hanna LLP
Once Commerce Plaza
Albany, New York  12260
cbuckley@woh.com


Michael D. Lockard
Akin Gump Strauss Hauer Feld LLP
590 Madison Avenue
New York, New York  10022-2524
mlockard@akingump.com


Rebecca N. Loubriel
Akin Gump Strauss Hauer Feld LLP
590 Madison Avenue
New York, New York  10022-2524
rloubriel@akingump.com

Thomas H. Golden